[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 487.]

THE STATE OF OHIO, APPELLEE, *v.* BEY, APPELLANT.

[Cite as *State v. Bey*, 1999-Ohio-283.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(No. 97-2247—Submitted February 9, 1999—Decided May 19, 1999.)

APPEAL from the Court of Appeals for Lucas County, No. L-94-003.

_____

{¶ 1} This appeal stems from the conviction and death sentence of Gregory L. Bey, alias Gregory L. Bryant-Bey, defendant-appellant, for the aggravated murder and the aggravated robbery of Dale Pinkelman.

{¶ 2} Pinkelman's body was found near a back office inside Pinky's Collectibles ("Pinky's"), a retail store opened by Pinkelman that sold various items, including watches. His shoes were lying next to his body, but his trousers were missing. Deputy Coroner Cynthia Beisser concluded that Pinkelman died within a few minutes "as a result of a [single] stab wound to the chest."

{¶ 3} Although when found Pinkelman's body still wore a gold necklace and a ring and a watch on each hand, merchandise was missing from the store's inventory. And despite the fact that Pinkelman customarily left $100 in loose currency in the register drawer and then placed the drawer in a storage room, the register was open, and the cash drawer, still in the register, had no visible currency. Additionally, Pinkelman's station wagon, which had been parked in front of the store the previous day, was missing.

{¶ 4} Police found an unknown fingerprint and palmprint on top of a glass display case approximately three feet in front of Pinkelman's body. Police also recovered Pinkelman's abandoned station wagon. But police never found Pinkelman's trousers or the murder weapon.

**{¶ 5}** The Pinkelman homicide remained unsolved until Toledo police arrested Bey three months after the Pinkelman murder for the aggravated murder of Peter Mihas. Police were called to a Toledo restaurant, after Mihas, the restaurant owner, was found stabbed to death. Toledo Detective William Gray immediately noticed similarities between the Mihas homicide and the unsolved Pinkelman homicide. The trousers of both victims had been removed, and their shoes were lying next to their bodies. And both victims were owners of small businesses who were robbed and killed by being stabbed in the chest when they were evidently alone at their businesses. Additionally, both victims still had jewelry on their persons.

**{¶ 6}** Police interviewed Bey regarding the Mihas homicide, and Bey admitted that he had killed Mihas. Then, after Bey's fingerprints and palm prints were taken, his prints were found to match the latent prints found on top of the glass case in Pinky's. And Bey lived two blocks from where police had found Pinkelman's station wagon.

**{¶ 7}** The next day, police interviewed Bey concerning the Pinkelman homicide. Bey at first denied ever meeting Pinkelman and ever being in Pinky's. Then Bey admitted that he had purchased a watch at Pinky's as a gift for his wife. He stated that he "owed" Pinkelman around $300 for the watch and that he "was asking [Pinkelman] for some time," but that Pinkelman "dogged" him for money. When asked if he had harmed Pinkelman or if he had taken his car, Bey said that he did not remember. Bey then refused to talk any further.

**{¶ 8}** The grand jury indicted Bey on four counts. Counts I and III charged the aggravated murder of Pinkelman and Mihas, respectively, under R.C. 2903.01(B), and both counts contained a death-penalty specification under R.C. 2929.04(A)(7), charging aggravated murder in the course of an aggravated robbery and naming Bey as the principal offender. Counts II and IV charged the aggravated

2

robbery against Pinkelman and Mihas, respectively, and each contained a prior felony-conviction specification. The trial court granted Bey's motion to sever.

{¶ 9} Bey was then separately tried for and convicted of the aggravated felony-murder and aggravated robbery of Mihas and sentenced to life imprisonment. See *State v. Bryant-Bey* (Mar. 10, 1995), Lucas App. No. L-93-184, unreported, 1995 WL 96783, discretionary appeal denied (1995), 73 Ohio St.3d 1411, 651 N.E.2d 1308, certiorari denied (1996), 516 U.S. 1077, 116 S.Ct. 784, 133 L.Ed.2d 734. In the case now pending before us, the jury convicted Bey of the aggravated murder of Pinkelman, including a felony-murder death-specification, as well as aggravated robbery. Following a penalty hearing, the jury recommended the death penalty. The trial court agreed and sentenced Bey to death and to a prison term for the aggravated robbery. At sentencing, the trial court found Bey guilty of the prior felony-conviction specification attached to the aggravated robbery charge. The court of appeals affirmed the convictions and death sentence. Bey now appeals here as a matter of right.

_____

*Craig T. Pearson,* Lucas County Assistant Prosecuting Attorney, for appellee.

*Jeffrey M. Gamso* and *Spiros P. Cocoves*, for appellant.

_____

**COOK, J.**

{¶ 10} In this appeal, Bey advances twenty-two propositions of law. (See Appendix, *infra*.) We have considered each of Bey's propositions of law, independently weighed the aggravating circumstance against mitigating factors, and reviewed the death penalty for appropriateness and proportionality. For the reasons that follow, we affirm Bey's convictions and the sentence of death.

I.  Other Acts Issues

A.  Proposition of Law I

**{¶ 11}** In proposition of law I, Bey asserts that the trial court erred by admitting "other acts" evidence under Evid.R. 404(B) that Bey murdered Mihas. Bey argues that the trial court's pretrial judgment entry on Bey's motion to exclude any evidence relating to other crimes, wrongs, or acts failed to include an explicit Evid.R. 403 analysis regarding whether the prejudicial impact of the "other acts" evidence outweighed its probative value.  Bey argues that the evidence of the Mihas murder should not have been admitted for any Evid.R. 404(B) reason because it is too prejudicial.

**{¶ 12}** Evid.R. 403(A) establishes a standard but does not require a trial court to explicitly state in its judgment entry that the probative value of the "other acts" evidence outweighs its prejudicial impact.

**{¶ 13}** As for whether the trial court should have excluded the evidence of the Mihas murder, we first note that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. See *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233, 1237; *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130.  For the following reasons, we determine that the trial court did not abuse that discretion by admitting the "other acts" evidence in this case.

**{¶ 14}** Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's criminal propensity.  "Other acts" evidence is admissible, however, if "(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Lowe* (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616, 619; see, also, Evid.R. 404(B).  Identity can be proven by establishing a *modus*

4

*operandi* applicable to the crime with which a defendant has been charged. See *Lowe*, 69 Ohio St.3d at 531, 634 N.E.2d at 619. But in order "[t]o be admissible to prove identity through a certain *modus operandi*, other acts evidence must be related to and share common features with the crime in question." *Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616, paragraph one of the syllabus; see, also, *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, syllabus ("Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404[B]."). For example, "evidence of 'other acts' to prove * * * the identity of the perpetrator is admissible where two deaths occur under almost identical circumstances." *State v. Smith* (1990), 49 Ohio St.3d 137, 551 N.E.2d 190, syllabus.

**{¶ 15}** First, in this case, substantial proof existed that Bey committed the "other act" because Bey admitted that he had killed Mihas and was convicted of that crime. Second, the "other act" evidence established a "behavioral fingerprint" linking the appellant to the crime due to the common features shared by the Mihas homicide and the Pinkelman homicide. See *Lowe*, 69 Ohio St.3d at 531, 634 N.E.2d at 619-620. The deaths of Mihas and Pinkelman occurred under practically identical circumstances. As the trial court noted, both victims were businessmen who were killed at their place of business, evidently in the absence of customers or employees. Both died after being stabbed in the chest by a knife. Uniquely, both men had their trousers removed and their shoes were placed next to their bodies. And although both businesses were robbed, jewelry was left on each person.

**{¶ 16}** Admittedly, some differences existed because, unlike Pinkelman, Mihas suffered other stab wounds and the knife was left in Mihas's body. Also, Mihas's trousers, with the pockets turned out, were found at the crime scene. Nonetheless, "[a]dmissibility is not adversely affected simply because the other robberies differed in some details." *Jamison*, 49 Ohio St.3d at 187, 552 N.E.2d at 185. Bey had the opportunity to argue the different details to the jury, and the jury

was to decide the weight to be accorded those differences. Accordingly, these facts demonstrate a similar method of operation and therefore the "other acts" evidence is probative of identity.

{¶ 17} Bey's contention that the "other acts" evidence was unnecessary because other evidence was available to prove identity is meritless because we have recognized that "need is irrelevant to an Evid.R. 404(B) objection." *State v. McNeill* (1998), 83 Ohio St.3d 438, 442, 700 N.E.2d 596, 603. And the prejudicial impact of the "other acts" evidence was minimized because the trial court, at Bey's request, twice instructed the jury that it could consider the Mihas homicide evidence *only* on the disputed issue of Bey's identity as Pinkelman's killer. Absent evidence to the contrary, we must presume that the jury followed these instructions. See *State v. Woodard* (1993), 68 Ohio St.3d 70, 73-74, 623 N.E.2d 75, 78. Accordingly, the trial judge did not abuse his discretion in admitting the "other acts" evidence because the Mihas homicide shared sufficient characteristics with the Pinkelman homicide to have probative value that outweighs any unfair prejudicial impact. Bey's proposition of law I is overruled.

## B. Proposition of Law II

{¶ 18} In proposition of law II, Bey argues that the trial court erred in admitting the "other acts" evidence regarding the Mihas homicide because his conviction for the Mihas homicide was obtained on the basis of evidence that should have been suppressed. During the Mihas trial and appeal, Bey unsuccessfully sought to suppress his confession that he killed Mihas and to suppress evidence from a hotel search. Bey attempts to resurrect this claimed suppression error in order to prevent the admission in this case of his Mihas conviction. We, however, find that Bey's argument lacks merit.

{¶ 19} Bey is collaterally estopped from relitigating the issue of whether the evidence admitted at the Mihas trial was admitted in error because this issue was already fully and finally litigated by the same parties involved in this case — the

state and Bey. *State v. Bryant-Bey*, *supra*. See *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 ("Collateral estoppel [issue preclusion] prevents parties * * * from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit."); *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, paragraph three of the syllabus; see, also, *Ashe v. Swenson* (1970), 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475, cited with approval in *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 452-453, 683 N.E.2d 1112, 1121 (establishing that collateral estoppel is relevant in criminal cases).

{¶ 20} Even if Bey were not collaterally estopped from relitigating this issue, the record in this case does not contain the evidence necessary to review his claim that the trial court erred in the Mihas trial by failing to suppress certain evidence.[1] And "[a] reviewing court cannot add matter to the record before it * * *." *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus. Accordingly, Bey's proposition of law II is overruled.

### C. Proposition of Law III

{¶ 21} In proposition of law III, Bey asserts that his counsel during the Mihas trial was ineffective in failing to raise certain suppression arguments and that, due to the ineffectiveness, Bey was prejudiced not only in the Mihas trial but also in this case because he was convicted in the Mihas trial based on the admitted evidence and because the evidence of his conviction was presented in this case. We reject Bey's assertion.

---

1. Bey did file an oral motion to suppress his statements about Pinkelman. The transcript at page 3 of the September 27, 1993 suppression hearing refers vaguely to a stipulation as to the "testimony taken and the evidence in the previous hearing." That evidence and testimony, however, are not included in this record of trial.

{¶ 22} Bey is collaterally estopped from relitigating this issue. See *Scholler*, 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, paragraph three of the syllabus. The court of appeals in the Mihas case already disposed of Bey's ineffective-assistance claim relating to the suppression issue when it addressed his assignment of error VIII. See *State v. Bryant-Bey, supra*. Moreover, even if the issue were not barred by collateral estoppel, we would decline to review it because Bey failed to raise it at the court of appeals in this case. See *State v. Jester* (1987), 32 Ohio St.3d 147, 154, 512 N.E.2d 962, 970; *State v. Abrams* (1974), 39 Ohio St.2d 53, 55, 68 O.O.2d 30, 31, 313 N.E.2d 823, 825; *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179, paragraph two of the syllabus. Bey's proposition of law III is therefore overruled.

D. Proposition of Law IV

{¶ 23} In proposition of law IV, Bey argues that the trial court erred in instructing the jury during voir dire to limit consideration of the "other acts" evidence "for the sole purpose relating to the element of identity." But the trial court issued the instruction at Bey's request. We find no error.

{¶ 24} Trial courts customarily give this type of instruction when "other acts" evidence is introduced to ensure that juries understand the limited purpose of such evidence. See 4 OJI (1997) 30, Section 402.61; *State v. Flonnory* (1972), 31 Ohio St.2d 124, 126-129, 60 O.O.2d 95, 96-98, 285 N.E.2d 726, 729-731. The fact that the trial court gave this instruction during voir dire is of no consequence because a trial court may give preliminary instructions to the jury before taking evidence, see *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph one of the syllabus, and "the scope of voir dire falls within a trial court's discretion." *State v. Lundgren* (1995), 73 Ohio St.3d 474, 481, 653 N.E.2d 304, 315; *State v. Bedford* (1988), 39 Ohio St.3d 122, 129, 529 N.E.2d 913, 920. We therefore conclude that the trial court acted properly and within its discretion in instructing the jury regarding "other acts" evidence during voir dire.

**{¶ 25}** Even if the trial court had erred by instructing the jury, Bey could not complain because he invited the error by requesting the instruction. Under the invited-error doctrine, "[a] party will not be permitted to take advantage of an error which he himself invited or induced." *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, paragraph one of the syllabus; *State v. Seiber* (1990), 56 Ohio St.3d 4, 17, 564 N.E.2d 408, 422. As a result, Bey's proposition of law IV is overruled.

E. Proposition of Law V

**{¶ 26}** In proposition of law V, Bey claims that he received ineffective assistance of counsel based upon his counsel's decision to request that the "other acts" instruction be given to the jury during voir dire. We determine that Bey's claim is without merit.

**{¶ 27}** First, counsel's decision to request such a cautionary instruction represented a reasonable professional judgment. The trial judge had already ruled the "other acts" evidence admissible. Counsel understood the impact that the "other acts" evidence might have in this case, knew that the prosecution would introduce such evidence, and chose to take the "sting" out of the evidence by disclosing it early. See *State v. Tyler* (1990), 50 Ohio St.3d 24, 34, 553 N.E.2d 576, 590. Under these circumstances, counsel made a reasonable tactical decision that we do not second-guess. See *State v. Mason* (1998), 82 Ohio St.3d 144, 157, 694 N.E.2d 932, 949 (Court "will not second-guess trial strategy decisions."); *Strickland v. Washington* (1984), 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").

**{¶ 28}** But even assuming that Bey's counsel was ineffective, Bey's claim must still fail because Bey has failed to demonstrate prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; see, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. Because Bey offers no argument supporting the prejudice prong of *Strickland*, his proposition of law V is overruled.

## II. Prosecutorial Misconduct

### A. Proposition of Law VI

{¶ 29} In proposition of law VI, Bey alleges that the prosecutor committed misconduct based on his remarks during guilt-phase closing arguments. We initially note that Bey failed to object to some of the instances of alleged prosecutorial misconduct, thereby waiving all but plain error. Crim.R. 52(B). Regarding the remarks to which Bey did object, we must determine (1) whether the prosecutor's remarks were improper, and if so, (2) whether the remarks prejudicially affected Bey's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885.

{¶ 30} First, Bey asserts that the prosecutor "made a plea to the jury on the effect that a conviction would have on the community" and that this call for the jury to convict in response to public demand is forbidden. In fact, the prosecutor simply and correctly noted, without defense objection, that "[t]he effects of this murder * * * are far reaching, not only to the family members, but throughout our community. But the faith in justice, the faith in the justice system depends on all of you doing your jobs * * * as sworn jurors * * * to follow the law." Prosecutors can legitimately call for justice or ask jurors to do their duty. See *State v. Slagle* (1992), 65 Ohio St.3d 597, 612, 605 N.E.2d 916, 930; *State v. Hicks* (1989), 43 Ohio St.3d 72, 76, 538 N.E.2d 1030, 1035-1036. This argument does not rise to the level of plain error.

{¶ 31} Second, Bey complains that the prosecutor improperly commented on opposing counsel when he said, "When a skilled attorney, much like Mr. Wingate [Bey's counsel], is stuck with this overwhelming evidence * * * he is left

with only one alternative, to try to create or implant some doubt * * *, confuse issues, create a cloud of doubt." At the outset, counsel objected to the "skilled attorney" reference. The prosecutor's remarks about confusing the issues or creating doubt arguably denigrated defense counsel. See *State v. Keenan* (1993), 66 Ohio St.3d 402, 406, 613 N.E.2d 203, 207. Yet even if improper, Bey has failed to show that he was prejudiced by the remarks. "Not every intemperate remark by counsel can be a basis for reversal." *State v. Landrum* (1990), 53 Ohio St.3d 107, 112, 559 N.E.2d 710, 718.

{¶ 32} Third, Bey alleges misconduct based on the prosecutor's remark: "[T]his detective knows [that Bey] is guilty, and don't let Mr. Wingate [Bey's counsel] have any of you think otherwise." Bey, however, objected to the remark, and the trial court sustained the objection. Thereafter, Bey never asked for a cautionary instruction.

{¶ 33} Fourth, Bey asserts that the prosecutor wrongly referred to facts not in evidence by asserting that an event happened "approximately four hours after the Pinkelman homicide occurred." Yet, the trial court correctly rejected Bey's objection. The time of the victim's death could be inferred. See *State v. Smith* (1997), 80 Ohio St.3d 89, 111, 684 N.E.2d 668, 689 ("Prosecutors are entitled to latitude as to what the evidence has shown and what inferences can reasonably be drawn from the evidence."); *State v. Grant* (1993), 67 Ohio St.3d 465, 482, 620 N.E.2d 50, 68. The remark was not improper, and Bey was not prejudiced by it.

{¶ 34} Fifth, Bey claims that the prosecutor explicitly argued Bey's bad character by commenting on the Mihas murder and thereby violated Evid.R. 404(A). Yet, the context shows that the prosecutor referred to the Mihas murder—the "other acts" evidence—only as proof of identity. And we note that Bey did not object to these remarks. We find that no plain error resulted from the remarks, given the trial court's instructions on "other acts" evidence. See *State v. Loza*

(1994), 71 Ohio St.3d 61, 79, 641 N.E.2d 1082, 1102-1103; *Woodard*, 68 Ohio St.3d at 73-74, 623 N.E.2d at 78.

{¶ 35} Finally, we review the closing argument in its entirety to determine prejudicial error. *State v. Frazier* (1995), 73 Ohio St.3d 323, 342, 652 N.E.2d 1000, 1016; *State v. Moritz* (1980), 63 Ohio St.2d 150, 157, 17 O.O.3d 92, 97, 407 N.E.2d 1268, 1273. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87. Here, misconduct by the prosecutor did not permeate his argument so as to deny Bey a fair trial. Cf. *Landrum*, 53 Ohio St.3d at 110-113, 559 N.E.2d 710, 716-719; *State v. Johnson* (1989), 46 Ohio St.3d 96, 101-102, 545 N.E.2d 636, 642. Bey's proposition of law VI is overruled.

B. Proposition of Law VII

{¶ 36} In proposition of law VII, Bey alleges that the prosecutor committed misconduct based on various remarks made during sentencing-phase opening and closing arguments. Bey, however, failed to object at trial on most of the issues he now raises and thus waived all but plain error. See *Slagle*, 65 Ohio St.3d at 604, 605 N.E.2d at 924-925; Crim.R. 52(B). Nonetheless, "[n]either alone nor in the aggregate did these [asserted] errors have an arguable effect on the outcome of the trial." *Slagle*, 65 Ohio St.3d at 605, 605 N.E.2d at 925.

{¶ 37} First, in preliminary remarks, the prosecutor opined without objection that a life sentence was appropriate, "if this defendant presents enough of these mitigating factors to outweigh the sheer horridness of his conduct when he took Mr. Pinkelman's life, the aggravating circumstances." With this remark, the prosecutor wrongly described the weighing process because the state has the burden of proof. The prosecutor also wrongly suggested that weighing hinges on the *number* of mitigating factors. Later in his argument, again without objection, the prosecutor stressed the facts of the crime as "obviously an aggravating set of circumstances." We condemn such remarks because they improperly suggested

12

that "the nature and circumstances of the offense are 'aggravating circumstances.'" See *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 662 N.E.2d 311, paragraph two of the syllabus.

{¶ 38} The trial court correctly instructed the jury on the weighing process and correctly and explicitly identified the relevant aggravating circumstance. The court's instructions on the law cure alleged misstatements of law by the parties. See *Loza*, 71 Ohio St.3d at 79, 641 N.E.2d at 1103; *Wogenstahl*, 75 Ohio St.3d at 360-361, 662 N.E.2d at 324-325.

{¶ 39} Second, Bey argues that the prosecutor should not have referred to the jury's verdict as a "recommendation," since the trial court had discouraged the use of that term. We agree; however, the prosecutor's reference did not violate the Constitution and no prejudicial error occurred. See *State v. Carter* (1995), 72 Ohio St.3d 545, 559, 651 N.E.2d 965, 977; *Woodard*, 68 Ohio St.3d at 77, 623 N.E.2d at 80-81; *State v. Henderson* (1988), 39 Ohio St.3d 24, 29-30, 528 N.E.2d 1237, 1243. We also note that the trial court is positioned to thwart such misconduct with sanctions.

{¶ 40} Third, Bey contends that the prosecutor's references to Pinkelman and his family turned victim-impact commentary into an aggravating circumstance. The prosecutor commented that "Dale Pinkelman will not be able to run his business anymore or engage in life's little pleasures, and * * * spend the rest of [his life] * * * with his family." Later, the prosecutor stated that "the loss experienced by the family and the community * * * as it relates to Dale Pinkelman can't be described." Again, Bey did not object. As we have held before, "brief, general statements by the prosecutor that [a victim] had a life, a job, and a family" are not outcome-determinative plain error. *McNeill*, 83 Ohio St.3d at 446, 700 N.E.2d at 605; accord *State v. Lorraine* (1993), 66 Ohio St.3d 414, 420-421, 613 N.E.2d 212, 218-219.

**{¶ 41}** Fourth, contrary to Bey's claim, the prosecutor did not "treat appellant's future dangerousness as a non-statutory aggravating circumstance." Instead, the prosecutor reviewed the defense evidence as to Bey's "history, character, and background" in responding to defense arguments regarding Bey's rehabilitation potential. A prosecutor may state an opinion based on evidence at trial, *Tyler*, 50 Ohio St.3d at 41, 553 N.E.2d at 595, and respond to defense arguments. See, *e.g.*, *State v. Rogers* (1986), 28 Ohio St.3d 427, 433-434, 28 OBR 480, 485-486, 504 N.E.2d 52, 57-58, reversed on other grounds (1987), 32 Ohio St.3d 70, 512 N.E.2d 581.

**{¶ 42}** Fifth, the prosecutor did not act improperly by referring to Bey's emotional outburst during sentencing argument. The prosecutor commented that "[e]ven in a structured environment, [Bey] * * * can still not cope with stress. We've all seen that." A prosecutor may comment on a defendant's physical appearance and likewise may make relevant comments upon a defendant's emotional outburst in open court before the jury. See *State v. Lawson* (1992), 64 Ohio St.3d 336, 347, 595 N.E.2d 902, 911; *State v. Brown* (1988), 38 Ohio St.3d 305, 317, 528 N.E.2d 523, 538. See, also, discussion on proposition of law XI, *infra*.

**{¶ 43}** As in *State v. Mills* (1992), 62 Ohio St.3d 357, 373, 582 N.E.2d 972, 986, here "the prosecutor did err by referring to statutory mitigating factors not raised by the defense, when he explained why those statutory mitigating factors were not present." As we have repeatedly noted, the trial court should instruct, and counsel should comment, only on mitigating factors specifically raised by an accused. See *Hicks*, 43 Ohio St.3d at 77, 538 N.E.2d at 1036, fn. 3; *State v. DePew* (1988), 38 Ohio St.3d 275, 289-290, 528 N.E.2d 542, 557-558. Again, if counsel exceeded the limits established by the cases from this court or as counseled by the trial judge, it is the trial court's role to discourage such misstep with sanctions when appropriate.

{¶ 44} More than ten years ago in *DePew*, we noted that "R.C. 2929.04(B) and (C) deal with mitigation and were designed to enable *the defendant* to raise issues in mitigation and to facilitate his presentation thereof. If the defendant chooses to refrain from raising some of or all of the factors available to him, those factors not raised may not be referred to or commented upon by the trial court or the prosecution. When the *purpose* of these sections is understood, it is clear that such comment is appropriate only with regard to those factors actually offered in mitigation by the defendant." (Emphasis *sic*.) *DePew,* 38 Ohio St.3d at 289, 528 N.E.2d at 557. Here, the trial court sustained the defense objection.

{¶ 45} When viewed in its entirety, the prosecutor's sentencing argument did not contribute unfairly to the death verdict and did not create outcome-determinative plain error. Cf. *Landrum*, 53 Ohio St.3d at 112-113, 559 N.E.2d at 718-719; *State v. Hill* (1996), 75 Ohio St.3d 195, 199, 661 N.E.2d 1068, 1075. Bey's proposition of law VII is overruled.

### III. Sentencing Instructions

### A. Proposition of Law VIII

{¶ 46} In proposition of law VIII, Bey argues that the trial court committed prejudicial error in its sentencing-phase instructions. Bey complains that the trial court improperly (1) defined mitigating factors, (2) listed all statutory mitigating factors, and (3) informed the jury that it could consider life imprisonment sentences only after it had rejected a death sentence or could not agree on the sentence. Bey concedes, however, that he did not object to the instructions as given. And his failure to object to the jury instructions constituted a waiver of all but plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus (The "failure to object to a jury instruction constitutes a waiver of any claim of error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise").

**{¶ 47}** In explaining mitigating factors, the judge stated, "[m]itigating factors are factors that, while they do not justify or excuse the crime, nevertheless, in fairness and mercy, may be considered by you as extenuating or reducing the degree of the defendant's blame of [*sic*] punishment." In *State v. Lawrence* (1989), 44 Ohio St.3d 24, 29, 541 N.E.2d 451, 457, we criticized similar penalty instructions and found that the reference to blame, when combined with other errors, was prejudicial. Mitigation is not about blame or culpability, but rather about punishment. See *State v. Holloway* (1988), 38 Ohio St.3d 239, 527 N.E.2d 831. Nonetheless, the overall sentencing instructions in this case told the jury that the issue was punishment, not culpability. Thus, the "instructional error on this point was harmless." *State v. Taylor* (1997), 78 Ohio St.3d 15, 30, 676 N.E.2d 82, 96. Accord *State v. Phillips* (1995), 74 Ohio St.3d 72, 101-102, 656 N.E.2d 643, 669; *State v. Joseph* (1995), 73 Ohio St.3d 450, 461, 653 N.E.2d 285, 294-295; *Woodard*, 68 Ohio St.3d at 77, 623 N.E.2d at 80.

**{¶ 48}** The trial court also erred by referring to all the statutory mitigating factors, even though the evidence related only to one factor—R.C. 2929.04(B)(7) "other factors." See *Hicks*, 43 Ohio St.3d at 77, 538 N.E.2d at 1036, fn. 3; *DePew*, 38 Ohio St.3d at 289-290, 528 N.E.2d at 558. We, however, find that this instructional deficiency did not constitute plain error. See *State v. Keith* (1997), 79 Ohio St.3d 514, 533, 684 N.E.2d 47, 65; *State v. Combs* (1991), 62 Ohio St.3d 278, 286-287, 581 N.E.2d 1071, 1079.

**{¶ 49}** Third, Bey complains that the trial court did not instruct the jury that a single juror could prevent a death-penalty recommendation in accordance with *State v. Brooks* (1996), 75 Ohio St.3d 148, 162, 661 N.E.2d 1030, 1042. Although the jury in this case did not receive the exact instruction from *Brooks*, no plain error occurred here because the jury received the information it needed in the charge given and the trial court did not commit the *Brooks* error. It did not instruct that the jury must unanimously determine that the death penalty is inappropriate before

16

considering a life sentence. See *Brooks,* 75 Ohio St.3d at 159, 661 N.E.2d at 1040. See, *e.g.*, *State v. Goff* (1998), 82 Ohio St.3d 123, 128-129, 694 N.E.2d 916, 921-922; *State v. Mitts* (1998), 81 Ohio St.3d 223, 233, 690 N.E.2d 522, 531; *Taylor*, 78 Ohio St.3d at 29, 676 N.E.2d at 95. Bey's proposition of law VIII is overruled.

## B. Proposition of Law IX

**{¶ 50}** In proposition of law IX, Bey argues that his trial counsel's failure to object to the erroneous sentencing instructions, as discussed in proposition VIII, constitutes ineffective assistance of counsel. Bey failed, however, to demonstrate prejudice, namely, "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. Bey has not shown that counsel's failure to object affected the outcome of the case. Bey's proposition of law IX is overruled.

## IV. Proposition of Law X

**{¶ 51}** In proposition of law X, Bey argues that he was denied his due process rights because the trial court did not, *sua sponte*, "conduct an inquiry as to whether he knowingly and intelligently waived his right to testify at trial."

**{¶ 52}** Generally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused. See, *e.g.*, *Rock v. Arkansas* (1987), 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37; *Jones v. Barnes* (1983), 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987, 993; *Brown v. Artuz* (C.A.2, 1997), 124 F.3d 73, 77. But in Ohio, courts of appeals have held that a trial judge is not required to conduct an inquiry with the defendant about the decision whether to testify. See, *e.g.*, *State v. Oliver* (1995), 101 Ohio App.3d 587, 656 N.E.2d 348. In fact, most courts have ruled that neither the United States Constitution nor applicable rules require the trial judge to ask the defendant about the decision not to testify. See, *e.g.*, *Artuz*, 124 F.3d at 78; *State v. Walen* (Minn.1997), 563 N.W.2d 742; *State v. Gulbrandson* (1995), 184 Ariz. 46, 64, 906

P.2d 579, 597; *Phillips v. State* (1989), 105 Nev. 631, 632-633, 782 P.2d 381, 382; *Aragon v. State* (1988), 114 Idaho 758, 762-763, 760 P.2d 1174, 1178-1179; *Commonwealth v. Hennessey* (1987), 23 Mass.App.Ct. 384, 387-390, 502 N.E.2d 943, 945-948. We agree and hold that a trial court is not *required* to conduct an inquiry with the defendant concerning the decision whether to testify in his defense.

{¶ 53} Reasons vary for rejecting the requirement. Such an inquiry is thought to be simply unnecessary. Alternatively, it may be thought harmful. As Chief Justice Erickson of the Colorado Supreme Court noted, an inquiry "unduly interfere[s] with the attorney-client relationship." *People v. Curtis* (Colo.1984), 681 P.2d 504, 519 (concurring opinion). An inquiry "places the judge between the lawyer and his client and can produce confusion as well as delay." *Underwood v. Clark* (C.A.7, 1991), 939 F.2d 473, 476. For example, questioning can lead into the judge's evaluation of the wisdom of the defendant's decision, the substance of the testimony, or simply evoke a dramatic change in a previously carefully considered trial strategy. See, *e.g.*, *United States v. Goodwin* (C.A.7, 1985), 770 F.2d 631, 636. "Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right." *Brooks v. Tennessee* (1972), 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358, 364.

{¶ 54} In this case, nothing in the record suggests that Bey misunderstood or was unaware of his right to testify or that Bey's counsel failed to advise him of his right. Nothing suggests that Bey wanted to testify and was denied the opportunity to do so. In fact, the trial judge in this case instructed the jury about Bey's constitutional right not to testify. Because we have determined that a trial court is not required to advise a defendant of his right to testify, the trial court's failure to do so cannot constitute error. Bey's proposition of law X is overruled.

V.  Accused's Outburst

A.  Proposition of Law XI

{¶ 55} In proposition of law XI, Bey argues that the trial court erred by failing to grant a mistrial or to voir dire jurors after an emotional outburst by him during the prosecutor's sentencing-phase closing argument.

{¶ 56} Bey's outburst occurred when the prosecutor was responding to the testimony of Bey's expert witness and to the content of Bey's unsworn statement. The prosecutor stated that, when Bey read his written statement to the jury, he was "attempting to show remorse for what happened, blaming his mother and his family."  Despite the fact that the trial judge had previously cautioned counsel about Bey's in-court behavior, Bey interrupted the prosecutor's sentencing argument and asserted, "Hey, don't you talk about my mother."  After the trial judge cautioned him, Bey responded, "You would have me * * * removed.  You don't talk about my mother."

{¶ 57} The jury was then removed, and Bey's counsel asked for (1) a mistrial, (2) an individual voir dire, and (3) an opportunity to apologize to the jury. The trial court denied a mistrial and denied any further voir dire of the jury, but allowed the defense to apologize to the jury.

{¶ 58} We cannot determine that the trial judge erred in denying Bey's request.  The trial judge could best determine whether Bey's right to a fair trial was compromised or whether voir dire of the jury was necessary.  We have long recognized that for witnesses and spectators, the "impact of emotional outbursts * * * cannot be judged * * * on a cold record."  *Hill*, 75 Ohio St.3d at 204, 661 N.E.2d at 1078.  The same principle also applies to outbursts by an accused. Whether the jury was " 'disturbed, alarmed, shocked or deeply moved * * * depend[s] on facts which no record can reflect.' "  *Id.*, quoting *State v. Bradley* (1965), 3 Ohio St.2d 38, 40, 32 O.O.2d 21, 22, 209 N.E.2d 215, 216.  " '[Absent] clear, affirmative evidence to the contrary, the trial court's determination will not

be disturbed.' " *State v. Benge* (1996), 75 Ohio St.3d 136, 144, 661 N.E.2d 1019, 1027, quoting *State v. Morales* (1987), 32 Ohio St.3d 252, 255, 513 N.E.2d 267, 271. Accord *Bradley*, 3 Ohio St.2d 38, 32 O.O.2d 21, 209 N.E.2d 215, syllabus.

{¶ 59} In addition, the judge did not need to instruct the jury to disregard the outburst. Bey created the outburst, so he may not persuasively argue that he is entitled to a mistrial or an instruction to the jury to disregard his own behavior. "A party cannot take advantage of an error he invited or induced." *Seiber*, 56 Ohio St.3d at 17, 564 N.E.2d at 422; *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 313, 31 OBR 587, 590, 511 N.E.2d 106, 109. Bey's proposition of law XI is overruled.

### B. Proposition of Law XII

{¶ 60} In proposition of law XII, Bey argues his counsel was ineffective for failing to request that the court instruct the jury to disregard Bey's outburst. But counsel did "request an admonition to the jurors that the outburst should not be considered * * * in any form." And the trial judge denied it. Bey's counsel did not fail to act and, thereby, cause him prejudice. See *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373. Accordingly, Bey's proposition of law XII is overruled.

### VI. Proposition of Law XIII

{¶ 61} In proposition of law XIII, Bey argues that the trial court erred in rejecting various pretrial motions. Those motions lacked merit, as set forth below, and therefore the trial court did not err.

{¶ 62} First, Bey argues that the trial court erred by denying his motion to "prohibit death qualification of the jury unless and until the state shows probable cause to believe the case will go to a mitigation hearing." But the trial court need not defer the process of death qualification of a jury until the sentencing phase. See *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph two of the syllabus. Second, Bey argues that the trial court erred in denying his

motion to order the prosecutor's office to produce its entire case. The trial court properly decided to deny that motion. See *Lawson*, 64 Ohio St.3d at 342-345, 595 N.E.2d at 907-909; *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 428, 639 N.E.2d 83, 89. Third, Bey argues that the trial court erred in denying his motion to prohibit the use of peremptory challenges in order to exclude jurors who express concerns about capital punishment. But the state may use a peremptory challenge based on opposition to the death penalty. *State v. Ballew* (1996), 76 Ohio St.3d 244, 253, 667 N.E.2d 369, 379; *Seiber*, 56 Ohio St.3d at 13, 564 N.E.2d at 419.

{¶ 63} Fourth, Bey argues that the trial court erred in denying his motion to dismiss the death specification because Ohio's death penalty law is unconstitutional. But the trial court did not err in refusing to dismiss the death-penalty specification because we have repeatedly held that Ohio's death penalty statute is not unconstitutional. See, *e.g.*, *Jenkins*, 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264; *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768; *State v. Buell* (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d 795; *State v. Zuern* (1987), 32 Ohio St.3d 56, 512 N.E.2d 585; *State v. Davis* (1992), 63 Ohio St.3d 44, 584 N.E.2d 1192. We need not address this issue again. See *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus. Within his arguments to this court regarding the constitutionality of the death penalty statute, Bey claims that Ohio's death penalty statute violates international law and treaties to which the United States is a party. Bey, however, failed to raise those international law claims at trial and thereby waived those arguments. See *State v. Keene* (1998), 81 Ohio St.3d 646, 669, 693 N.E.2d 246, 265. Nonetheless, this court rejected the argument that Ohio's death penalty statutes are in violation of treaties to which the United States is a signatory, and thus offends the Supremacy Clause of the United States Constitution, in *Phillips*, 74 Ohio St.3d at 103-104, 656 N.E.2d at 671.

**{¶ 64}** Finally, Bey argues that the trial court erred by substantially denying his motions for pretrial disclosure of witness statements and for individually sequestered voir dire. The trial court, however, does not need to require pretrial disclosure of witness statements. See Crim.R. 16; *State ex rel. Steckman*, 70 Ohio St.3d at 428, 639 N.E.2d at 89. Moreover, "whether a voir dire in a capital case should be conducted in sequestration is a matter of [the trial court's] discretion." *Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph two of the syllabus. Accordingly, we find no error in the trial court's decisions to reject Bey's pretrial motions, and Bey's proposition of law XIII is overruled.

VII. The Death Penalty

A. Propositions of Law XIV and XV

**{¶ 65}** In propositions of law XIV and XV, Bey argues that imposing the death penalty upon him is cruel and unusual punishment and that, in his case, it "can only be viewed as freakish, capricious and arbitrary." Bey's argument relies on three main facts: the death penalty had not been carried out in over thirty years in Ohio; no one had even been sentenced to die in Lucas County for seven years; and he received a life sentence in the Mihas trial, but a death sentence in this trial. Despite these facts, we reject both propositions as lacking merit.

**{¶ 66}** Ohio's death penalty statute is constitutional "in all respects," *State v. Evans* (1992), 63 Ohio St.3d 231, 253, 586 N.E.2d 1042, 1060, and the expressed public policy is to execute those deserving the death penalty. But delay has resulted because, "[h]aving assumed the power to take life, we have striven for a level of assurance in our decisions that is probably not humanly possible" and "[w]e have created a web of procedures so involved that they threaten to engulf the penalty itself." *State v. Steffen* (1994), 70 Ohio St.3d 399, 407, 639 N.E.2d 67, 73. The delay, however, in carrying out the death penalty does not mean that it is unenforceable.

**{¶ 67}** Additionally, the fact that the death penalty was not imposed by a court in a Lucas County case between 1986 and 1993 does not affect Bey's death sentence. A "finding that the death penalty is imposed in a discriminatory fashion [cannot occur] absent a demonstration of specific discriminatory intent." *Zuern*, 32 Ohio St.3d 56, 512 N.E.2d 585, syllabus. See, also, *State v. Byrd* (1987), 32 Ohio St.3d 79, 85-86, 512 N.E.2d 611, 619; *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph one of the syllabus. Bey has not asserted specific discriminatory intent in this case.

**{¶ 68}** Finally, the fact that Bey received a life sentence in the Mihas case does not mean that he cannot receive a death sentence in this case. The Mihas jury's finding that aggravation did not outweigh mitigation for *that* crime does not compel the same finding as to *this* crime. The Pinkelman jury knew that Bey had also murdered Mihas, and Bey's record of criminal behavior is relevant to consideration of the mitigating value of his history, character, and background. See *State v. Waddy* (1992), 63 Ohio St.3d 424, 428-429, 588 N.E.2d 819, 824. Based on this, the sentencing jury could have found more mitigating history in the Mihas trial than in this trial. Bey's propositions of law XIV and XV are overruled.

B. Proposition of Law XVI

**{¶ 69}** In proposition of law XVI, Bey argues that the trial judge erred in sentencing Bey to death by electrocution because R.C. 2949.22 gives Bey a choice between death by lethal injection and death by electrocution. The trial judge did order "death by electrocution," but the trial judge also included the language "*in the manner and place directed by* the provisions of Section 2949.22 of the Revised Code." (Emphasis added.) R.C. 2949.22(A) provides that a death sentence shall be executed by electrocution; however, R.C. 2949.22(B)(1) provides that any person sentenced to death may "elect" to be executed by lethal injection. Bey's statutory right to elect lethal injection was not precluded by the trial judge's order, especially considering the trial judge's express statement that Bey's execution

comply with R.C. 2949.22. Accordingly, Bey's proposition of law XVI is overruled.

## C. Proposition of Law XVII

{¶ 70} We summarily reject Bey's proposition of law XVII, which challenges Ohio's system of proportionality review. *State v. Moore* (1998), 81 Ohio St.3d 22, 39, 689 N.E.2d 1, 16; *Steffen*, 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph one of the syllabus; *Poindexter*, 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus.

## D. Proposition of Law XVIII

{¶ 71} In proposition of law XVIII, Bey argues that his trial counsel provided ineffective assistance by failing to raise the proportionality review issue, thereby waiving that review. But Bey is mistaken; counsel raised the issue before trial. Bey's counsel therefore did not act improperly. Nonetheless, we have summarily rejected the challenge of Ohio's system of proportionality review *supra*. Bey's proposition of law XVIII is overruled.

## E. Proposition of Law XIX

{¶ 72} In proposition of law XIX, Bey makes generalized claims that his counsel provided ineffective assistance based on the failure to raise legitimate objections at trial and that Bey thereby suffered serious prejudice. Bey, however, fails to cite any specific failure to object and fails to explain how he was prejudiced beyond what we have already addressed. By failing to cite examples of asserted ineffectiveness, Bey has failed to demonstrate either his counsel's deficient performance or prejudice arising from the deficient performance. Both are required to prove ineffective assistance of counsel. See *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373. Moreover, the record reflects competent assistance of counsel. Here, as in *Ballew*, 76 Ohio St.3d at 256, 667 N.E.2d at 380, Bey's counsel presented "strong, vigorous, and competent representation at the guilt phase." Counsel also

provided competent representation at the sentencing hearing. Bey's proposition of law XIX is overruled.

VIII. Previous Sentencing Opinions

A. Proposition of Law XX

{¶ 73} In proposition of law XX, Bey argues that the court of appeals erred in affirming the death penalty for Bey because it applied the wrong standard when weighing the specified aggravating circumstance against the mitigating factors and failed to appropriately consider the mitigating factors offered.

{¶ 74} Although the court of appeals did mistakenly comment that "the combined [mitigating] factors * * * are insufficient to outweigh the aggravating circumstance," the error is harmless. The court of appeals correctly acknowledged the state's burden to prove that the aggravating circumstance outweighed the mitigating factors. Moreover, the entire opinion shows that the court of appeals understood and applied the correct standard. See *State v. Hill* (1995), 73 Ohio St.3d 433, 437-439, 653 N.E.2d 271, 277-278.

{¶ 75} Also we find unpersuasive Bey's argument that the court of appeals did not consider and give appropriate weight to Bey's mitigating factors—his existing life sentence for the Mihas murder, his remorse, and his prospects for serving a useful role during incarceration. " ' The process * * *, as well as the weight, if any, to assign a given factor is a matter for the discretion of the individual decisionmaker.' " *Taylor*, 78 Ohio St.3d at 31-32, 676 N.E.2d at 97, quoting *State v. Fox* (1994), 69 Ohio St.3d 183, 193, 631 N.E.2d 124, 132. And a "court of appeals is not required to explain its reasons in finding that the aggravating circumstances outweigh the mitigating factors." *State v. McGuire* (1997), 80 Ohio St.3d 390, 395, 686 N.E.2d 1112, 1117; R.C. 2929.05(A). We cannot conclude that the court of appeals failed to give proper consideration to Bey's mitigating factors or abused its discretion in assessing the weight to be accorded such factors.

**{¶ 76}** Even if the court of appeals did err, "[t]he independent weighing process at each appellate level * * * provides a procedural safeguard against the arbitrary imposition of the death penalty." *Holloway*, 38 Ohio St.3d 239, 527 N.E.2d 831, paragraph two of the syllabus. Our independent sentence evaluation and reweighing can cure the effect of errors in previous death-penalty sentencing decisions, including those by the court of appeals. See *McGuire*, 80 Ohio St.3d at 395, 686 N.E.2d at 1117; *Hill*, 75 Ohio St.3d at 211, 661 N.E.2d at 1083; *Hill*, 73 Ohio St.3d at 442, 653 N.E.2d at 280. Bey's proposition of law XX is overruled.

B. Proposition of Law XXI

**{¶ 77}** In proposition of law XXI, Bey asserts, *inter alia*, deficiencies in the trial court's sentencing opinion. First, Bey argues that the trial court did not understand mitigating factors because it explained that Bey's history and background "did not control or compel the Defendant into his life of crime and violence." Second, Bey complains that the trial court wrongfully discounted his remorse and intent to change his life. Third, Bey complains that the trial court did not give "any weight" to his already existing life sentence.

**{¶ 78}** We find these arguments to lack merit. The trial court's evaluation of the mitigating factors falls within the trial court's sentencing discretion, and just because an item of evidence is admissible does not mean that the trial court must give it weight. See *Steffen*, 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph two of the syllabus; *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293, 305 ("[T]he assessment and weight to be given mitigating evidence are matters for the trial court's determination."). Accord *Taylor*, 78 Ohio St.3d at 31-32, 676 N.E.2d at 97; *Fox*, 69 Ohio St.3d at 193, 631 N.E.2d at 132. We cannot determine that the trial court failed to give proper consideration to Bey's mitigating factors because the trial court discussed the mitigating factors presented by Bey in its opinion.

**{¶ 79}** Last, Bey argues that the trial court turned the facts of the crime into an aggravating circumstance. The trial court, in explaining why the aggravating circumstance outweighed the mitigating factors, dramatized the murder when it wrote: "Without warning, [Bey] thrust his silent and deadly knife into the heart of the victim. As the victim's life blood drained into his chest cavity, [Bey] then dehumanized the helpless dying victim by removing his trousers and ritualistically placing his shoes near the body as if the deceased were an object or trophy. [Bey] seized the spoils of his violent and deadly act and then fled the scene."

**{¶ 80}** But the trial court's description, though colorful, was accurate. And the trial court has the responsibility to examine the nature and circumstances of the offense to determine whether they are mitigating. See *Wogenstahl*, 75 Ohio St.3d at 354-355, 662 N.E.2d at 320-321. Here, the court's narrative description "on the gruesome and vicious nature of the murder" may be viewed as "justifying its conclusion that no mitigating" features could be found. *Id.* at 355, 662 N.E.2d at 321. When a court correctly identifies the aggravating circumstance, "that court is presumed to rely only on that circumstance, and not on nonstatutory aggravating circumstances." *Hill*, 73 Ohio St.3d at 441, 653 N.E.2d at 279; *State v. Rojas* (1992), 64 Ohio St.3d 131, 142, 592 N.E.2d 1376, 1386. We therefore reject Bey's contention that the trial court's explanation evidences prejudicial error.

**{¶ 81}** Moreover, we have stated in several previous cases that any alleged error in the trial court's sentencing opinion can be cured by this court's independent review of the death sentence. See, generally, *Lott*, 51 Ohio St.3d at 170-173, 555 N.E.2d at 304-307. See, also, *Fox*, 69 Ohio St.3d at 191-192, 631 N.E.2d at 131; *State v. Reynolds* (1998), 80 Ohio St.3d 670, 684-685, 687 N.E.2d 1358, 1373.

IX. Appropriateness of Death Penalty—Propositions of Law XXI and XXII

{¶ 82} In propositions of law XXI and XXII, Bey argues that the aggravating circumstance does not outweigh the mitigating factors and that the death penalty is inappropriate and disproportionate. We will consider Bey's arguments as part of the independent sentence evaluation, *infra*.

X. Independent Sentence Evaluation

{¶ 83} We independently review Bey's death sentence for appropriateness and proportionality.

{¶ 84} We find that the evidence proves beyond a reasonable doubt the aggravating circumstance charged against Bey, R.C. 2929.04(A)(7). The evidence demonstrates that Bey, as the principal offender, purposely killed Pinkelman and that he did so during an aggravated robbery.

{¶ 85} In mitigation, Dr. Barbara McIntyre, a psychologist, testified on Bey's behalf. She was able to interview Bey and testified that, although apprehensive at first, Bey was polite and cooperative throughout the interview. The interview revealed information about Bey's history and background. Bey was born in Toledo, but his birth mother abandoned him as a baby. He was then adopted by a woman he thought was his birth mother and raised in New York. His adoptive mother was very strict, very demanding, and very abusive, physically and emotionally. She beat him regularly. In the fourth grade, Bey ran away and attempted to walk back to Toledo. When he was thirteen, his birth mother traveled to New York in order to take Bey back to Toledo. But shortly after arriving in Toledo, she again abandoned him, leaving him with her former husband who was not Bey's father. Bey later learned of the identity of his father, but not until after his father had died. Although Bey was part of a rather large family, many of whom lived in Toledo, he still always felt alone in the world and as if there was no one whom he could trust.

{¶ 86} Bey graduated from high school and "attended some college courses off and on," but did not complete a degree program. He was married twice and fathered two children, but neither marriage was successful. He has been employed in many fields and at many places, rarely being unemployed for more than several weeks at a time. Bey spent two years in the Air Force, but was apparently discharged for "inability to cope with stress" and "verbal belligerence."

{¶ 87} Bey admitted that he began using drugs while a junior in high school. He stated that he turned to drugs and alcohol in an effort to control the anger he felt at everybody. Although Bey worked steadily at a succession of jobs, he admitted stealing to support his drug habit and for the adventure of stealing. McIntyre noted that Bey "has no juvenile criminal record." But she further noted that his criminal record as an adult included convictions for felonious assault and for stealing, which was upgraded to a felony due to his many misdemeanors.

{¶ 88} McIntyre administered a battery of psychological tests and concluded that Bey had no major mental illness or psychiatric problems. She noted, however, that the tests showed that he was suffering from "long term, chronic, low-level depression" and that he had a serious personality disorder with antisocial and paranoia features. She further noted that Bey had few resources for coping with stress, was very impulsive, and became overwhelmed with negative emotions such as anger or pain. McIntyre testified in sum that Bey was a "man with a near life-long history of psychological and behavioral problems." Yet she believed that Bey could change and that he wanted to get rid of the hate and anger in his life. Bey had been reading The Bible, The Autobiography of Malcolm X, and psychology and philosophy books and stated that they had been helpful in changing his attitudes. He expressed his desire to accomplish something with his life and hoped to be of help to younger men in prison. McIntyre concluded that Bey had work to do in order to change, but that he is interested in doing the work for himself and for others.

**{¶ 89}** In addition, Bey gave an unsworn statement. He stated that he "was sorry for all the hurt" that he had caused and that his life had been "nothing but a struggle * * * a struggle that [he had] lost." Further he stated, "[w]ith my deepest sympathy to those whose lives have been touched by this tragedy, I ask God for his forgiveness. I'm sorry for the incident and my heart will always have to regret it." At the time of sentencing, Bey expressed sorrow for the Pinkelman family and stated again that he wanted to live and help others in prison. Bey also appeared to question whether the evidence proved that he killed Pinkelman.

**{¶ 90}** After reviewing the evidence in mitigation, we find that the nature and circumstances of the offense do not reveal any mitigating value. The evidence shows that Bey attacked, robbed, and killed a defenseless shopkeeper on a Sunday evening. As Pinkelman lay on the floor, bleeding to death, Bey ransacked his store, taking money from the register, merchandise from the store, and finally the victim's car from the parking lot.

**{¶ 91}** We now review the mitigating value of Bey's history, character, and background. In light of Bey's criminal history disclosed in McIntyre's testimony, we find nothing mitigating in Bey's character. In contrast, Bey's history and background reflect some mitigating features entitled to modest weight. Bey, abandoned as a baby and raised in an abusive atmosphere, lacked parental nurturing, a stable home, and the parental love and affection needed for proper development. Nonetheless, Bey graduated from high school, attended some college, and worked steadily in a succession of jobs. Although he had no mental disease or defect qualifying under R.C. 2929.04(B)(3), he suffered from long-term depression and had a serious personality disorder with antisocial and paranoia features. Eventually, Bey turned to drugs and alcohol in an effort to alleviate his problems, but these only made matters worse.

**{¶ 92}** As for the statutory mitigating factors listed in R.C. 2929.04(B), first, the R.C. 2929.04(B)(1) and (2) statutory mitigating factors are inapplicable

given the record before us. R.C. 2929.04(B)(3) is inapplicable because the testimony from McIntyre, the defense psychologist, did not attempt to establish the "mental disease or defect" mitigating factor. Additionally, we do not find that Bey's mental disorder caused him to lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. R.C. 2929.04(B)(4) is inapplicable because, at the time of the offense, Bey was thirty-seven years old. R.C. 2929.04(B)(5) is not applicable to this case and, because there is no evidence in the record suggesting another principal offender, neither is R.C. 2929.04(B)(6).

{¶ 93} Bey, however, argues that "other" R.C. 2929.04(B)(7) factors exist in his case and that these factors are strong mitigating factors that render the death penalty both inappropriate and disproportionate. The factors, however, on which Bey relies are not compelling.

{¶ 94} First, Bey argues that residual doubt is a strong mitigating factor in this case. Bey contends that such doubt should not be discounted because his conviction predates *McGuire*, 80 Ohio St.3d 390, 686 N.E.2d 1112, which rejected residual doubt as a mitigating factor. *McGuire*, however, applies retroactively. See *State v. Webb* (1994), 70 Ohio St.3d 325, 330-331, 638 N.E.2d 1023, 1029-1030; *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 411, 129 N.E.2d 467, 468. See, also, *Goff*, 82 Ohio St.3d at 131, 694 N.E.2d at 923.

{¶ 95} Second, Bey argues that his life sentence for the Mihas murder should be considered a strong mitigating factor. Bey is correct that we should consider as a relevant sentencing factor that he has had already been sentenced to life with no parole eligibility for thirty years for aggravated murder and to fifteen to twenty-five years for robbery in the Mihas case. See *Bradley*, 42 Ohio St.3d at 149, 538 N.E.2d at 385-386. But the fact that Bey has already been convicted of killing another person—Mihas—is also relevant to the weighing process to rebut mitigating evidence offered as "history, character, and background." See *Waddy*,

63 Ohio St.3d at 428-429, 588 N.E.2d at 824; *State v. Richey* (1992), 64 Ohio St.3d 353, 372, 595 N.E.2d 915, 931. We therefore find that, on balance, Bey's life sentence for the murder of Mihas is not entitled to significant mitigating weight.

{¶ 96} Third, Bey urges his remorse and willingness to change as weighty mitigating factors. Remorse, expressed desire to change, and drug and alcohol problems can be considered mitigating factors under R.C. 2929.04(B)(7). *Landrum*, 53 Ohio St.3d at 125, 559 N.E.2d at 729; *Rojas*, 64 Ohio St.3d at 143, 592 N.E.2d at 1387. But we accord only modest weight to Bey's remorse and willingness to change expressed in his unsworn statement. See, *e.g.*, *State v. Raglin* (1998), 83 Ohio St.3d 253, 273, 699 N.E.2d 482, 498. Also, Bey's drug and alcohol problems, which apparently stem from his "personality disorder," are entitled to "some, but very minimal, weight in mitigation." See, *e.g.*, *State v. Palmer* (1997), 80 Ohio St.3d 543, 576, 687 N.E.2d 685, 712; *State v. Biros* (1997), 78 Ohio St.3d 426, 457, 678 N.E.2d 891, 916.

{¶ 97} We conclude, after weighing the evidence presented in mitigation against the R.C. 2929.04(A)(7) aggravating circumstance—aggravated murder committed as the principal offender in the course of aggravated robbery, that the aggravating circumstance outweighs the modest mitigating factors beyond a reasonable doubt. Accordingly, the death sentence in this case is statutorily appropriate. Bey's proposition of law XXI is overruled.

{¶ 98} Last, we find that the death penalty imposed in this case is neither excessive nor disproportionate when compared with similar cases in which the offender committed aggravated murder in the course of aggravated robbery, especially considering that many comparable cases have had stronger mitigating evidence. See, *e.g.*, *McNeill*, 83 Ohio St.3d at 454, 700 N.E.2d at 611 (troubled upbringing, nineteen years old, borderline intelligence); *Raglin*, 83 Ohio St.3d at 267-273, 699 N.E.2d at 494-498 (troubled upbringing, eighteen years old, mental problems); *Benge*, 75 Ohio St.3d 136, 661 N.E.2d 1019 (troubled upbringing, prior

good character, hard worker, lack of prior criminal convictions); *Woodard*, 68 Ohio St.3d 70, 623 N.E.2d 75 (troubled upbringing, nineteen years old); *State v. Green* (1993), 66 Ohio St.3d 141, 609 N.E.2d 1253 (very difficult childhood, IQ of 66). Accordingly, Bey's proposition of law XXII is overruled.

{¶ 99} For the foregoing reasons, we affirm Bey's convictions and death sentence.

*Judgment affirmed.*

DOUGLAS, GRADY, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and PFEIFER, J., concur in judgment only.

THOMAS J. GRADY, J., of the Second Appellate District, sitting for RESNICK, J.

_____

APPENDIX

{¶ 100} "**FIRST PROPOSITION OF LAW:**  A trial court errs when it permits the State to introduce evidence that a criminal defendant committed another offense, under Evid.R. 404(B), without first conducting an analysis of whether the prejudicial impact of the evidence outweighed its probative value.

{¶ 101} "**SECOND PROPOSITION OF LAW:**  A trial court errs in admitting evidence of a defendant's involvement in another criminal offense when the conviction in that offense was obtained on the basis of evidence which should have been suppressed.

{¶ 102} "**THIRD PROPOSITION OF LAW:**  A criminal defendant receives ineffective assistance of counsel when his trial attorney does not object to, and actually assents to, admission of prejudicial evidence which should have been suppressed.

{¶ 103} "**FOURTH PROPOSITION OF LAW:**  A trial court commits prejudicial error when it instructs the jury, during individual voir dire, of the State's intention to use other acts evidence during its case in chief.

{¶ 104} "**FIFTH PROPOSITION OF LAW:** When a criminal defendant's trial counsel encourag[e] the trial court to instruct the venire, during individual voir dire, of the State's intention to use other acts evidence during its case in chief, trial counsel violat[e] the constitutional duty to provide their client with effective assistance of counsel.

{¶ 105} "**SIXTH PROPOSITION OF LAW:** A prosecutor in a capital case commits misconduct resulting in denying a criminal defendant a fair trial when, during closing argument at the guilt or innocence phase of the trial, he (1) urges the jury to consider the effect on the community of the offense and of their verdict; (2) improperly lauds the skill of defense counsel; (3) states his personal view of the veracity of a witness; (4) argues matters not in evidence; and (5) plays to the passions and emotions of the jury.

{¶ 106} "**SEVENTH PROPOSITION OF LAW:** A prosecutor commits misconduct and violates the rights of a capital defendant under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and under Sections 1, 2, 5, 9, 10, 16, and 20, Article I of the Ohio Constitution when, during the State's opening and closing statements at the mitigation phase of the trial, the prosecutor:

"(1) improperly tells the jury that they should make their determination based on the number of mitigation factors appellant presented;

"(2) improperly tells the jury that it should treat the nature and circumstances of the offense as an aggravating circumstance;

"(3) repeatedly refers to the 'aggravating circumstances' to be weighed against the mitigating factors although there was but a single aggravating circumstance;

"(4) despite an order to the contrary, tells the jury that their verdict at mitigation will be a recommendation;

"(5) urges the jury to sentence appellant to death because the victim was a good man and appellant dared to cause harm to the victim's family;

"(6) suggests to the jury that it treat the likelihood of appellant's future dangerousness as a non-statutory aggravating circumstance;

"(7) indicates that appellant's outburst in response to his closing argument should be treated as a non-statutory aggravating circumstance; and

"(8) directs the jury's attention to appellant's failure to produce evidence regarding the mitigating factors set forth in R.C. 2929.04(B)(1), (2), (3), (4), (5), and (6).

{¶ 107} "**EIGHTH PROPOSITION OF LAW:** A trial court commits prejudicial error in its instructions to the jury at the mitigation phase of a capital trial in violation of appellant's rights under the Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 5, 9, 10, 16, and 20, Article I of the Ohio Constitution. Specifically, the trial court:

"(1) improperly defined mitigating factors;

"(2) improperly listed each of the mitigating factors identified in R.C. 2929.04(B) although evidence was provided only in regard to the catchall provision of R.C. 2929.04(B)(7); and

"(3) improperly informed the jury that it could consider imposing one of the life imprisonment sentences only if it had first either determined that a death sentence should not be imposed or determined that it was unable to reach a unanimous decision as to a sentence of death.

{¶ 108} "**NINTH PROPOSITION OF LAW:** A capital defendant receives constitutionally ineffective assistance of counsel and his death sentence constitutes cruel and unusual punishment when his trial counsel fail to object to significant and repeated error in the trial court's instructions to the jury.

{¶ 109} "**TENTH PROPOSITION OF LAW:** A trial court denies a capital defendant his rights to due process under the constitutions of the United

States and the State of Ohio when it fails to conduct an inquiry as to whether he knowingly and intelligently waived his right to testify at trial.

{¶ 110} "**ELEVENTH PROPOSITION OF LAW:** A trial court commits prejudicial error when, after an in-court outburst by a defendant in a capital trial, it refuses to grant a mistrial and refuses to individually voir dire the jurors, and when it indicates to the jury that they may consider the outburst in weighing the aggravating circumstance against the mitigating factors.

{¶ 111} "**TWELFTH PROPOSITION OF LAW:** Counsel at the mitigation phase of a capital trial renders ineffective assistance by waiving error regarding the court's failure to instruct the jury to disregard an outburst by the defendant.

{¶ 112} "**THIRTEENTH PROPOSITION OF LAW:** A trial court errs by denying a capital defendant's motions to:

"(1) prohibit death qualification of the jury unless and until the state has shown probable cause to believe the case will go to a mitigation hearing;

"(2) order a prosecutor's office to turn over to the court its entire case file;

"(3) prohibit the use of peremptory challenges to exclude jurors who express concerns about capital punishment;

"(4) dismiss the death specifications because Ohio's death penalty law is unconstitutional both in the abstract and as applied;

"and also by denying in substantial part a capital defendant's motions for

"(1) pretrial disclosure of witness statements; and

"(2) individually sequestered voir dire.

{¶ 113} "**FOURTEENTH PROPOSITION OF LAW:** A death penalty law which has not been effectuated in over thirty years is, by definition cruel and unusual.

{¶ 114} "**FIFTEENTH PROPOSITION OF LAW:** Imposition of the death penalty in this case can only be viewed as freakish, capricious, and arbitrary.

{¶ 115} "**SIXTEENTH PROPOSITION OF LAW:** A [t]rial court may not order a sentence of electrocution in light of R.C. 2949.22.

{¶ 116} "**SEVENTEENTH PROPOSITION OF LAW:** A trial court errs in imposing a death sentence when the death penalty law as applied in Ohio violates R.C. 2929.05(A) by requiring appellate courts and the Supreme Court, in conducting their R.C. 2929.05(A) review of 'similar cases' for proportionality, to review only those in which a sentence of death was imposed and ignore those in which a sentence of life with parole eligibility after twenty full years or life with parole eligibility after thirty full years was imposed. The current method also violates the rights to fair trial and due process and results in the imposition of cruel and unusual punishment as set forth in the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and in Sections 1, 2, 5, 9, 10, 16, and 20, Article I of the Ohio Constitution.

{¶ 117} "**EIGHTEENTH PROPOSITION OF LAW:** Trial counsel in a capital case provide ineffective assistance when they fail to raise substantial matters for later review, thereby waiving that review.

{¶ 118} "**NINETEENTH PROPOSITION OF LAW:** A defendant who is sentenced to death following a trial and mitigation hearing in which his counsel was deficient has been denied his rights to fair trial and due process and is subjected to cruel and unusual punishment, all as set forth in the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and in Sections 1, 2, 5, 9, 10, 16, and 20, Article I of the Ohio Constitution.

{¶ 119} "**TWENTIETH PROPOSITION OF LAW:** Because Ohio's death penalty scheme permits a sentence of death only when the aggravating circumstances of which a capital defendant is convicted outweigh beyond a reasonable doubt the mitigating factors, a court of appeals errs to the defendant's prejudice and denies him his rights to a fair appellate tribunal and due process and subjects him to cruel and unusual punishment when, in conducting its statutorily

mandated independent weighing, it ignores mitigation evidence introduced and affirms the death sentence because the mitigating factors are insufficient to outweigh the aggravating circumstance.

{¶ 120} "**TWENTY-FIRST PROPOSITION OF LAW:** A death sentence must be reversed when this Court's independent weighing of the aggravating circumstance against the mitigating factors proved by a preponderance of the evidence reveals that the death sentence was wrongly given.

{¶ 121} "**TWENTY-SECOND PROPOSITION OF LAW:** A sentence of death is wrongly imposed when it is inappropriate and not proportional to the sentence imposed in similar cases."