[Cite as *State v. Smith*, 2014-Ohio-4984.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0066** |
| ARNOLD J. SMITH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2011 CR 503.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Christopher J. Boeman*, 3537 North Ridge Road, Perry, OH 44081 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from the sentencing judgment in a criminal action before the Ashtabula County Court of Common Pleas. Appellant, Arnold J. Smith, seeks reversal of his conviction for illegal assembly or possession of chemicals for the manufacture of drugs and possession of criminal tools. As the primary basis for appeal, he contends that the trial court erred in denying his motion to suppress and his separate motion for mistrial on the grounds of prosecutorial misconduct. For the following reasons, we

affirm.

{¶2}    During the early morning hours of December 2, 2011, Deputy Sherri Allen and Sergeant James Truckey of the Ashtabula County Sheriff's Office were on routine patrol in separate cruisers on Mechanicsville Road in Rome Township, Ashtabula County, Ohio.  While their two cruisers were stopped near the intersection of Callender Road and Mechanicsville Road, Sergeant Truckey saw a blue Ford Ranger truck drive into the intersection without stopping at a stop sign.  This intersection is about one mile from appellant's residence on Boymar Road.

{¶3}    Sergeant Truckey decided to follow the truck and conduct a traffic stop. Deputy Allen drove behind Sergeant Truckey as back-up.  When the sergeant activated his overhead lights, the Ford Ranger accelerated leading the two officers on a chase for approximately seven miles.  Ultimately, the Ford Ranger veered onto private property and ran into a pile of dirt located near an oil and gas well.  Unhurt in the crash, the driver exited the vehicle and ran into the woods.  Although the two officers tried to follow him on foot, the driver escaped apprehension.

{¶4}    Upon returning to the truck, the officers searched the interior.  In addition to two firearms, the officers found a small tin vial that appeared to contain illegal substance residue.  The officers also found a number of power tools bearing the name "Light."  From prior experience, Sergeant Truckey knew two brothers named "Light" who were known to travel through the general vicinity.  Moreover, one of the brothers was thought to be engaged in drug activity.

{¶5}    Based upon information previously seen in an inter-office memo, Sergeant Truckey had a general suspicion of drug activity at appellant's residence on Boymar

2

Road. At some point prior to December 2011, appellant left his Boymar Road home due to a foreclosure action. However, because he owned a separate parcel across the street from his home, appellant simply moved the majority of his belongings to that parcel and resided there in two small tents standing a short distance from the end of a dirt driveway. The two tents and the area between them were covered by a number of tarps to protect from the weather. According to appellant, he also draped tarps over a climbing rope stretched between two trees in front of the tents so that the enclosed area could not be seen from the road.

{¶6} Given the information in the inter-office memo, the fact that the Ford truck was only a mile from Boymar Road when it was first spotted, and the nature of the items found in the truck, Sergeant Truckey and Deputy Allen decided to drive back to Boymar Road and go to appellant's place once the "truck" search was finished. When the officers initially drove by, they saw a truck sitting in the dirt driveway that, according to the license plate, was not registered to appellant. Furthermore, after exiting their cruisers, and standing in the road, the officers could see the two tents and the tarps hanging overhead as well as lights glowing in both tents.

{¶7} Wooden planks marked a path from the dirt driveway to the door of one of the tents. As the officers were walking on the planks toward the tents, Sergeant Truckey called out that they were from the sheriff's department, and that they were there to see appellant. Once the officers arrived at the tents, appellant responded that he was there, and then unzipped the door to the tent on the right. Both officers were standing right next to the door and could see into appellant's tent.

{¶8} According to Deputy Allen, when she was within five feet of appellant's

3

tent, she began to smell the chemical odor often surrounding the manufacture of methamphetamine. This smell became more pronounced after appellant unzipped the tent door. Moreover, as the officers peered into tent, they saw a number of items on the floor associated with that type of activity, including coffee filters, Coleman fuel, lithium batteries, funnels, and aluminum foil.

{¶9} Since the "methamphetamine production" materials found in the tent are considered dangerous in nature, a third member of the county sheriff's department, Detective Brian Rose, was called to the scene. After the evidence was safely taken into custody, appellant and three others were placed under arrest. Approximately one month later, appellant was indicted on three charges: (1) illegal assembly or possession of chemicals for the manufacture of drugs, a third-degree felony under R.C. 2925.04; (2) possessing criminal tools, a fifth-degree felony under R.C. 2923.24; and (3) illegal manufacture of drugs, a second-degree felony under R.C. 2925.04.

{¶10} After pleading not guilty to all counts, appellant moved to suppress all evidence seized by the officers from his tent. As the sole basis for the motion, he asserted that Sergeant Truckey and Deputy Allen violated his Fourth Amendment right by entering his residence without a warrant. In support, he claimed that his "residence" did not merely consist of the tent he was in when the two officers came on his property, but also included the area covered by the tarps. He emphasized that, by hanging the tarps over the rope so that they were draped in front of the tents, he created an enclosure that was intended to protect his privacy.

{¶11} An evidentiary hearing was held on the motion to suppress, during which all three officers who were involved in the seizure of evidence testified for the state. In

4

response, appellant testified on his own behalf. In its judgment entry overruling the motion, the trial court found that there was a sufficient gap in the tarps hung over the climbing rope to allow Sergeant Truckey and Deputy Allen to see the tents directly from the road. The court also found that it was not necessary for those officers to move any tarps or other items before arriving at the door to appellant's tent. In addition, the court held that, once Sergeant Truckey and Deputy Allen began to smelled the chemical odor coming from appellant's tent the officers had probable cause to search as well as exigent circumstances in light of the potential dangers associated with methamphetamine manufacturing.

{¶12} The underlying action remained pending for over eighteen months. On at least three occasions, appellant's trial counsel moved the trial court to compel the state to give him access to the Ford Ranger truck involved in the chase. The trial court issued an order requiring the state to comply with the discovery request. However, appellant's counsel was not afforded access to the truck. Then, in early February 2013, the prosecutor informed appellant's counsel that the truck had been inadvertently destroyed by the towing company. In light of this, appellant moved the trial court to dismiss all pending charges. An evidentiary hearing on this motion was conducted by a court magistrate who issued a decision denying appellant's request to dismiss. Although the trial court subsequently vacated the magistrate's decision, it also issued a judgment denying the motion to dismiss.

{¶13} A two-day jury trial was held in August 2014. The four individuals who previously testified at the suppression hearing were the only trial witnesses. As part of his trial testimony, appellant stated that the incriminating objects found in his tent did not

5

belong to him, and that he found the objects in a backpack beside the road. Throughout the trial, the prosecutor tried to reference the inter-office memo in the sheriff's department raising a suspicion of drug activity at appellant's property. Although the trial court generally permitted the prosecutor and the witnesses to note the existence of the memo, they were not allowed to fully discuss its substance. At the conclusion of trial, appellant moved for a mistrial based upon the state's multiple references to the memo. Consistent with its prior rulings on appellant's objections, the trial court overruled the motion.

{¶14} The jury found appellant not guilty of the illegal manufacture of drugs, but guilty of illegal assembly or possession of chemicals for the manufacture of drugs and possessing criminal tools. Ultimately, the trial court ordered appellant to serve two concurrent two year terms of community control.

{¶15} In appealing his conviction, appellant raises three assignments of error for review:

{¶16} "[1.] The trial court abused its discretion and erred, to the prejudice of appellant-defendant, by denying his motion to suppress evidence obtained by the Ashtabula County Sheriff's Department in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

{¶17} "[2.] The trial court abused its discretion and erred, to the prejudice of defendant-appellant, by overruling defendant's motion to dismiss premised upon the state's failure to preserve evidence without either a hearing or explanation.

{¶18} "[3.] The prosecutor committed prosecutorial misconduct during his opening statement, during the course of the jury trial, and in his closing arguments

6

warranting reversal of the defendant's conviction."

{¶19} Under his first assignment, appellant challenges the denial of his motion to suppress the evidence found in his tent. In doing so, appellant does not contest that the drug paraphernalia was in plain view when he opened the tent's door. Similarly, he does not contest that once Sergeant Truckey and Deputy Allen were near the tent, the chemical odor emanating from inside was sufficient to give the two officers probable cause to search the area. Instead, appellant maintains that standing beside the tent without a warrant constituted a violation of his Fourth Amendment right. Specifically, he asserts that the tent was his residence and the hanging tarps constitute curtilage.

{¶20} Citing *United States v. Duncan*, 480 U.S. 294 (1987), appellant posits that the tarp-covered area must be considered "curtilage" because the area was completely surrounded by the tarps. Referencing his own testimony at the suppression, he states that he not only hung the tarps over the roofs of the two tents, but he also draped the tarps over a climbing rope that hung in front of the tents. According to him, the draped tarps went from eight feet in the air to the ground, thereby giving him complete privacy from anyone who would be on the road.

{¶21} The state's suppression evidence tended to show that, if there were any tarps draped over a rope across the "tent" area, they were not pulled together when the officers walked on the property. First, Sergeant Truckey testified that there was "nothing" blocking his view of both tents from the road. He further stated that, in approaching the tent area from the driveway, he did not have to maneuver around any obstacles. Second, Deputy Allen testified that it was not necessary to move any "coverings" in order to gain access to the tent area, and that wooden planks led directly

7

to the door of appellant's tent. Third, Detective Rose stated that, although there was a blue tarp over both tents, no objects had to be moved before walking into that general area.

{¶22} As part of its analysis in its suppression judgment, the trial court found that there was a gap between the tarps enabling the officers to view appellant's tent from the road. Although appellant testified that the draped tarps across the front were pulled together that night, the testimony of the three officers constituted some competent, credible evidence supporting the trial court's finding to the contrary. In fact, the officers' testimony supported the finding that the gap between the tarps was quite substantial. Taken as a whole, their testimony establishes that the officers could see the entire tent area, including both tents, from the road.

{¶23} "Appellate courts, including this one, have held that homeowners, or other legal occupiers of a residence, do not have a reasonable expectation of privacy as to what can be routinely viewed from their driveway, sidewalk, doorstep, or other normal routes of ingress to or egress from the home. See *State v. Durch* (1984), 17 Ohio App.3d 262, 263, * * *; see, also, *State v. Golubov,* 9th Dist. No. 05CA0019, 2005-Ohio-4938, at ¶11; *State v. Alexander* (Oct. 6, 2000), 2d Dist. No. 2000-CA-6, 2000 Ohio App. LEXIS 4646, *6. In support of this view, the Second Appellate District has opined:

{¶24} ""In the course of urban life, we have come to expect various member of the public to enter upon such a driveway, e.g., brush salesman, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, friends. Any one of them may be reasonably expected to report observations of criminal activity to the police(.) If one has a reasonable expectation that various members of society may

8

enter the property in their personal or business pursuits, he should find it equally likely that the police will do so.'"

{¶25} "'"There would be no colorable Fourth Amendment question had the police walked up the driveway in order to knock on (the defendant's) door to ask him some questions. Criminal investigation is a legitimate societal purpose as is census taking or mail delivery. The 'plain view' doctrine would clearly have applied to any observation made on the way to the door."' (Citations omitted). *Alexander*, supra." *Willoughby v. Dunham*, 11th Dist. Lake No. 2010-L-068, 2011-Ohio-2586, ¶19-21.

{¶26} In this case, Sergeant Truckey and Deputy Allen had an unobstructed view of appellant's tent from the road to the tent's door. Moreover, there were wooden planks which marked a path from the driveway to the tent's door. Given these facts, the planks served as a sidewalk providing ingress and egress from appellant's tent. Thus, pursuant to *Dunham*, the tarp-covered area around appellant's tent constituted an area in which appellant did not have a reasonable expectation of privacy. As a result, the officers did not need a warrant in order to access that part of appellant's property regardless of the curtilage issue.

{¶27} Even before appellant opened the tent's door, at least one deputy smelled the chemical odor associated with the production of methamphetamine. Moreover, upon opening the tent, the manufacturing products were seen. Thus, the deputies had probable cause. Moreover, exigent circumstances existed allowing the officers to enter the tent and take all necessary steps to protect the public from a possible dangerous situation due to the volatile explosive nature of the chemicals. *See State v. Campbell*, 11th Dist. Ashtabula No. 2013-A-0035, 2013-Ohio-5823, ¶36. Accordingly, no Fourth

9

Amendment violation occurred in the seizure of the drug paraphernalia found in the tent. Appellant's first assignment lacks merit.

{¶28} Under his second assignment, appellant contends that he was denied due process of law when the Ford Ranger truck was destroyed before his trial counsel had an opportunity to look at it. While acknowledging that the truck would not have had any exculpatory evidence, he asserts that his counsel may have discovered evidence which could have been useful at trial. Specifically, appellant submits that his counsel could have found flaws in the officers' statements of the events which could have been used to challenge the officers' credibility at trial.

{¶29} During the suppression hearing, a considerable amount of testimony was given in order to establish a logical connection between the Ford Ranger chase and the officers' ensuing decision to drive by appellant's residence. However, given our legal analysis under the first assignment, the reason for going to appellant's tent is of no legal significance. Regardless of why, the deputies were allowed to enter appellant's land.

{¶30} Moreover destruction of the truck did not result in a due process violation as the methamphetamine materials supporting conviction were all seized from the tent. For this reason, his second assignment of error is not well-taken.

{¶31} Under his final assignment, appellant asserts that he was denied his right to a fair trial because the assistant prosecutor engaged in multiple forms of misconduct throughout the proceeding. In support, he first claims that the prosecutor made multiple improper references to the inter-office memo circulated in the sheriff's office concerning possible drug activity on Boymar Road. Second, appellant contends that the prosecutor improperly tried to connect him to the subsequent arrest of one of the three individuals

who were also present in the tents when the drug paraphernalia was seized. Third, he maintains that the prosecutor improperly commented upon his post-arrest silence as to whether the paraphernalia found in his tent actually belonged to him.

{¶32} As a general proposition, a two-prong test is employed to decide whether a criminal defendant must be granted a new trial based upon prosecutorial misconduct: (1) were the prosecutor's remarks improper; and (2) was the defendant prejudiced by the remarks? *State v. Beckwith*, 11th Dist. Ashtabula No. 2013-A-0050, 2014-Ohio-2877, ¶36; *State v. Coleman*, 11th Dist. Portage No. 2013-P-0072, 2014-Ohio-2708, ¶21.

{¶33} "'Generally, prosecutorial misconduct is not a basis for overturning a criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial.' *State v. Hillman*, 10th Dist. Nos. 06AP-1230 and 07AP-728, 2008-Ohio-2341, at ¶26. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. *State v. Bey* (1999), 85 Ohio St.3d 487, 495, * * *." *State v. Dudas*, 11th Dist. Lake Nos. 2008-L-109 and 2008-L-110, 2009-Ohio-1001, ¶26.

{¶34} Regarding appellant's first allegation of prosecutorial misconduct, during his opening statement and in his questioning of the state's three witnesses, the prosecution made multiple references to the inter-office memo originally mentioned during the suppression hearing. As noted above, the substance of the memo was that Detective Rose received a tip that drug activity was taking place at appellant's residence. At trial, the primary reason for the references to the memo was to establish why Sergeant Truckey and Deputy Allen chose to drive by appellant's place after the

11

driver of the truck escaped apprehension. As part of his questioning as to the memo, the prosecutor attempted to elicit information regarding the substance of the memo. However, the trial court did not allow the prosecutor to make the connection between the alleged drug activity and appellant's residence. Rather, it would only allow the officers to say that the memo referred to drug activity on Boymar Road.

{¶35} Given the facts of this case, there are at least two reasons for the prosecutor to ask questions regarding the inter-office memo: (1) to explain why Sergeant Truckey and Deputy Allen went to Boymar Road after they did not apprehend the truck driver; and (2) to establish the truth of the matter asserted that there is drug activity on Boymar Road. As a general proposition, testimony concerning an extrajudicial statement is not considered hearsay when it is introduced to explain the subsequent actions of a person to whom the statement was directed, i.e., effect on the listener. *See State v. Osie*, __ Ohio St.3d __, 2014-Ohio-2966, ¶122. Thus, the first reason for referencing the memo was permissible. However, permitting this testimony to establish drug activity as an affirmative fact constitutes inadmissible hearsay. *See* Evid.R. 801(C); Evid.R. 802.

{¶36} The trial court allowed the prosecutor to refer to the memo for the purpose of explaining the subsequent actions of Sergeant Truckey and Deputy Allen, which is permissible. Appellant did not request a limiting instruction. Thus, there was no error. Moreover, even if the jury impermissibly heard the testimony for the truth of the matter asserted, it was not prejudicial. The critical evidence was the incriminating nature of the items found in appellant's tent.

{¶37} Appellant's second allegation of prosecutorial misconduct surrounds

12

questioning regarding Rolf Linder who was in the tent with appellant when the evidence was seized. At trial, appellant testified that he had no contact with Linder following their arrest. In cross-examining appellant as to the accuracy of that testimony, the prosecutor inferred that Linder was later arrested in Lake County on a separate offense and attempted to get appellant to admit that he was with Linder in Lake County. Appellant denied that he was arrested with Linder.

{¶38} After appellant's testimony ended, the prosecutor informed the trial court that he was told by the Lake County Prosecutor's Office that appellant was arrested with Linder in the separate Lake County incident and that this formed the basis of his inquiry. The prosecutor also told the court that he was prepared to call an officer to testify about the Lake County incident in rebuttal, but that, in speaking to the officer moments before putting him on the stand, the officer informed that appellant was not arrested with Linder in Lake County. After learning of this issue, the prosecutor asked the trial court to give the jury a curative instruction on the point. The court granted the motion, specifically telling the jury to disregard all questions and answers as to whether appellant was arrested with Linder a second time expressly informing the jury that appellant was not arrested with Linder: "Court: And before we hear the closing statement of counsel, there is a matter concerning the cross-examination of the Defendant when he was asked by Mr. Barrett if he was arrested in Painesville with Rolf Linder. You are instructed to disregard that question and any answer. There was no arrest of Mr. Smith with Rolf Linder in Painesville. It did not occur. So don't discuss it. It did not happen. Don't talk about it; okay?"

{¶39} Appellant argues that the entire problem could have been avoided if the

13

prosecutor had adequately investigated Linder's second arrest prior to trial. However, in light of the fact that the prosecutor was relying upon information from another county prosecutor's office, the record demonstrates that an honest mistake was made. More importantly, the jury was expressly instructed to not consider the point as part of its final deliberations. Therefore, again, no prejudice obtained.

{¶40} Appellant's last allegation of prosecutorial misconduct is predicated upon the fact that, after appellant testified that he was innocent because he found the drug paraphernalia in a backpack that someone else threw into a ditch, the prosecutor tried to ask him why he did not mention this fact to the officer at the time of his arrest. In addition, during his closing argument, the prosecutor argued to the jury that appellant was essentially telling a "story" that he had never mentioned during the eighteen months the case was pending. Appellant now states that the prosecutor's argument constituted an improper comment upon his decision to invoke to his right to remain silent following his arrest.

{¶41} In answering the prosecutor's question on the "backpack" issue, appellant testified that, while he was being transported to the sheriff's office, he specifically tried to explain to an officer how he found the backpack in a nearby ditch. Hence, pursuant to appellant's own testimony, he did not seek to invoke his right to remain silent during the post-arrest period. To this extent, the prosecutor's actions did not prejudice appellant.

{¶42} Taken as a whole, the transcript does not show that appellant was denied a fair trial as a result of any inappropriate actions taken by the prosecutor. Thus, as the trial court did not err in overruling appellant's motion for a mistrial, his third assignment

14

of error is not well taken.

{¶43} As each of appellant's three assignments do not have merit, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.