[Cite as *State v. Driftmyer*, 2017-Ohio-4016.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                          Court of Appeals No. OT-16-021

      Appellee                                    Trial Court No. CRB 1501010 A

v.

Daniel A. Driftmyer                              **DECISION AND JUDGMENT**

      Appellant                                   Decided:  May 26, 2017

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney,
and David R. Boldt, Assistant Prosecuting Attorney, for appellee.

Amanda A. Andrews, for appellant.

* * * * *

**JENSEN, P.J.**

## I.  Introduction

**{¶ 1}** Appellant, Daniel Driftmyer, appeals the judgment of the Ottawa County

Municipal Court, sentencing him to a total of 270 days in jail following a jury trial in

which he was found guilty of one count of domestic violence.  We affirm.

## A. Facts and Procedural Background

{¶ 2} On September 1, 2015, a complaint was filed with the trial court, charging appellant with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. Appellant's wife, S.C., was the victim named in the complaint.

{¶ 3} At his arraignment, appellant entered a plea of not guilty, and the matter proceeded through pretrial discovery. A jury trial subsequently commenced on June 7, 2016, at which the state called S.C. and the investigating officer involved with the case, Matt Gandee. Appellant called no witnesses in his defense.

{¶ 4} At trial, the following facts were elicited: On August 29, 2015, appellant was finishing a "booze cruise" on Lake Erie when he contacted S.C. to have her pick him up at a bar in Sandusky. According to S.C., appellant was visibly drunk when she arrived at the bar, as evidenced by the fact that he was slurring his words. On the way back to the camper in which the couple lived, which was located in Ottawa County, appellant made several attempts to touch and kiss S.C. S.C. pushed appellant away from her each time because she was upset about his drunken condition.

{¶ 5} Once the couple arrived back at the camper, appellant seized S.C.'s phone and stated that "there must be a reason why you are pushing me away from you." Appellant took the phone into an outdoor bathroom, where he remained for 20 minutes. Out of concern for appellant's well-being, S.C. eventually entered the bathroom to check on appellant. S.C. asked appellant for her phone, at which point, appellant questioned her

2.

about text message conversations he found on her phone. Suspecting infidelity, appellant became upset and broke S.C.'s phone. The couple then made their way back into the camper.

{¶ 6} Sometime thereafter, appellant grabbed S.C.'s leg as she was lying on the couch, and proceeded to pull her off the couch. After pulling her to the floor, appellant started banging S.C.'s head on the floor and choking her. S.C. was able to get up, at which point she made her way into a back room where her belongings were kept. S.C. was attempting to place her belongings into a bag when appellant entered the room and started to pull her hair and drag her by her hair back into the living room. According to S.C.'s testimony, this entire incident lasted two hours.

{¶ 7} At the conclusion of the incident, S.C. fled the camper and made her way to a laundromat, where she tried to gather herself. She testified that she was "so scared and so confused." She remained at the laundromat for 20 minutes, then proceeded back to the camper to get her dog and her phone.

{¶ 8} After leaving the camper, S.C. traveled to her father's home. She did not contact the police until 19 hours after the incident occurred. When asked about why she waited so long to contact the police, S.C. testified that she loved appellant and was confused as to why he would treat her in that manner. Nonetheless, she met with a friend later on in the day, who advised her to report the incident to the police. She took the friend's advice and drove to the Ottawa County Sheriff's office in Port Clinton, where she met with Deputy Gandee.

3.

**{¶ 9}** According to Gandee, when S.C. spoke with him, she was "covered in bruises pretty much head to toe, crying, shaking. She looked scared." Gandee questioned S.C. about the incident and photographed the extensive bruising on S.C.'s body. The photographs were admitted into evidence at trial.

**{¶ 10}** At the conclusion of the trial, the jury found appellant guilty of domestic violence. The trial court proceeded to sentencing, ordering appellant to serve 180 days in jail, to be served consecutively to two sentences that were suspended in prior cases, for a total jail sentence of 270 days. Thereafter, appellant filed a timely notice of appeal.

## B. Assignments of Error

**{¶ 11}** On appeal, appellant assigns the following errors for our review:

Assignment of Error I: Appellant's Conviction of Domestic Violence was Contrary to the Manifest Weight of the Evidence.

Assignment of Error II: The Appellant Received Ineffective Assistance of Counsel During the Trial.

## II. Analysis

**{¶ 12}** In his first assignment of error, appellant asserts that his conviction was against the manifest weight of the evidence.

**{¶ 13}** When reviewing a manifest weight claim,

The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220.

{¶ 14} The crime of domestic violence is codified in R.C. 2919.25. Relevant here, R.C. 2919.25 provides: "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 15} Here, appellant asserts that the evidence introduced at trial fails to establish that appellant had any physical contact with S.C. Notably, S.C. testified that appellant dragged her by her legs and hair, choked her, and banged her head against the floor. This testimony, paired with Deputy Gandee's observation that S.C. was "covered in bruises pretty much head to toe" clearly establishes that physical contact between appellant and S.C. occurred in this case.

{¶ 16} Notwithstanding this evidence, appellant posits that S.C.'s injuries were self-inflicted, as evidenced by the absence of corroborating testimony from others with whom she had contact during the 19 hours between the altercation and her arrival at the sheriff's office. Specifically, appellant argues that those individuals, including S.C.'s father and her friend, should have noticed such extensive bruising and would have been called to testify at trial on S.C.'s behalf. Because these individuals were not called to

5.

testify, appellant concludes that S.C.'s bruises were self-inflicted in an effort to frame appellant for domestic violence.

{¶ 17} Having reviewed the entire record, we do not find that appellant's conviction for domestic violence was against the manifest weight of the evidence. As noted above, appellant introduced no evidence to discredit appellant's testimony that he brutally assaulted her when they returned to their home after a long night of heavy alcohol consumption. Appellant's theory that he was framed and that S.C. inflicted head-to-toe injuries on herself in an effort to have him prosecuted is utter conjecture and is entirely unsupported by the evidence.

{¶ 18} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 19} In his second assignment of error, appellant argues that he was deprived of the effective assistance of trial counsel because trial counsel failed to call witnesses on his behalf who would have exonerated him and prevented him from taking the stand in his own defense.

{¶ 20} In order to demonstrate ineffective assistance of counsel, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must show that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694.

6.

**{¶ 21}** "'[C]ounsel's decisions on which witnesses to call fall within the province of trial strategy and will not usually constitute ineffective assistance of counsel.' *Toledo v. Prude*, 6th Dist. [Lucas] No. L-02-1250, 2003-Ohio-3226." *State v. Reissig*, 6th Dist. Wood No. WD-03-019, 2004-Ohio-1642, ¶ 23. Even debatable trial tactics do not constitute ineffective assistance of counsel. *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 222.

**{¶ 22}** Here, appellant fails to identify how calling additional witnesses, whom he identifies as S.C.'s boyfriend and father, would have altered the outcome of this case. Rather, appellant merely speculates as to the content of the testimony these individuals would offer, suggesting that they would have testified that they did not observe any markings on S.C.'s body indicative of domestic violence during their conversations with S.C. in the hours following the incident. Upon review, we find that trial counsel was not ineffective for failing to call additional defense witnesses.

**{¶ 23}** Next, we turn to appellant's argument that trial counsel was ineffective for refusing to allow him to take the stand. "Defendants have 'a fundamental and a personal right' to testify, which is 'waivable only by an accused.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 257, quoting *State v. Bey*, 85 Ohio St.3d 487, 499, 709 N.E.2d 484 (1999). Thus, the decision whether to take the stand ultimately rests with the defendant. *State v. Turner*, 6th Dist. Wood No. WD-11-025, 2012-Ohio-3863, ¶ 45, citing *Bey* at 499. Moreover, "[t]he decision whether to call a defendant as a witness falls within the purview of trial tactics." *State v. Adkins*, 144 Ohio App.3d 633,

7.

646, 761 N.E.2d 94 (12th Dist.2001). "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

{¶ 24} The record in this case contains no evidence of appellant's desire to take the stand to testify in his defense, much less any evidence that appellant's counsel actually prevented him from exercising his right to testify. Thus, we must presume that appellant's failure to take the stand was a tactical decision arrived at jointly between appellant and his trial counsel. Therefore, appellant's argument concerning his right to testify does not support a finding of ineffective assistance of counsel. *State v. Baughman*, 6th Dist. Lucas No. L-11-1045, 2012-Ohio-5327, ¶ 34.

{¶ 25} Accordingly, appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 26} For the foregoing reasons, the judgment of the Ottawa County Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.      _____
                JUDGE

James D. Jensen, P.J.

                _____
Christine E. Mayle, J.          JUDGE
CONCUR.

                _____
                JUDGE