[Cite as *Toledo v. Taylor*, 2020-Ohio-3991.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo

    Appellee

v.

April Maria Taylor

    Appellant

Court of Appeals Nos. L-19-1205
L-19-1206

Trial Court No. TRC-19-03599

**DECISION AND JUDGMENT**

Decided: August 7, 2020

* * * * *

David Toska, Chief Prosecutor, and Jimmie Jones, Assistant
Prosecutor, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} In this consolidated appeal appellant, April Taylor, appeals the judgment of

the Toledo Municipal Court, sentencing her to ten days in jail after finding her guilty of

operating a motor vehicle under the influence of alcohol or drugs. Finding no error

below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On the early morning of February 23, 2019, appellant was operating her vehicle on Secor Road in Toledo, Ohio, when she was pulled over by Ohio State Highway Patrol trooper Brian Mull.

{¶ 3} Prior to initiating the stop, Mull observed appellant traveling at a "very noticeable high rate of speed" visually estimated to be between 50 and 55 m.p.h. in a 40 m.p.h. zone. Upon activating his radar, Mull determined that appellant was traveling at a speed of 59 m.p.h. Thereafter, Mull noticed appellant make an "abrupt stop" at a red light. When the light turned green, Mull observed appellant quickly accelerate through the intersection and he began to follow appellant.

{¶ 4} As Mull was observing appellant's vehicle, he noticed that the left tires traveled completely over the centerline by approximately one foot. Thereafter, Mull noticed the right tires travel completely over the lane division line, at which point he activated his lights and siren to initiate a traffic stop. At the time the stop was initiated, Mull paced appellant and determined that she was traveling at a rate of speed "in the upper 60s" in a 35 m.p.h. zone. Subsequently, Mull clocked appellant traveling at a speed "in the fifties" via radar.

{¶ 5} During the course of the traffic stop, Mull detected the odor of alcohol emanating from the passenger compartment of appellant's vehicle. Consequently, Mull asked appellant to exit the vehicle, and he proceeded to conduct a series of three sobriety tests, all of which appellant failed. Thereafter, Mull administered a breathalyzer test,

2.

which revealed that appellant was operating her vehicle with a blood alcohol content of .199 grams of alcohol per 210 liters of breath. As a result, Mull issued a citation charging appellant with one count of operating a vehicle under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, one count of operating a vehicle under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(h), a misdemeanor of the first degree, one count of driving under suspension in violation of R.C. 4510.11, a misdemeanor of the first degree, and one count of driving in marked lanes in violation of R.C. 4511.33, a minor misdemeanor.

{¶ 6} On March 15, 2019, appellant appeared before the trial court and entered a plea of not guilty to the aforementioned charges. Thereafter, the matter proceeded through pretrial motion practice and discovery.

{¶ 7} On July 29, 2019, appellant filed a motion to suppress, in which she argued that the traffic stop that gave rise to her citation was improper because a video of the stop demonstrated that she was not speeding or traveling outside of the marked lanes as articulated by the officer who initiated the stop. In its memorandum opposing appellant's motion to suppress, filed the same day as appellant's motion, the state argued that the traffic stop was justified because the officer witnessed appellant speeding and committing a marked lanes violation prior to initiating the stop.

{¶ 8} On August 26, 2019, the matter proceeded to a hearing on appellant's motion to suppress. At the conclusion of the suppression hearing, the trial court denied appellant's motion to suppress based upon its finding that the traffic stop was supported

3.

by reasonable articulable suspicion that appellant had sped and committed a marked lanes violation.

{¶ 9} The matter then immediately proceeded to a trial before the bench. As its sole witness, the state called Mull to the stand, who testified regarding the sobriety tests and the breathalyzer test that he conducted in this case. At the conclusion of the state's case in chief, appellant moved for an acquittal under Crim.R. 29, which was granted as to the charge of driving under suspension, but denied as to the remaining charges.

{¶ 10} Thereafter, appellant took the stand, testifying that her failure of the sobriety tests in this case were the result of Mull taking her prescription eyeglasses at the beginning of the traffic stop. Further, appellant testified that the breathalyzer machine that Mull used to administer the breathalyzer test broke into pieces while the test was being administered.

{¶ 11} In response to appellant's testimony, the state recalled Mull as a rebuttal witness. Mull explained that the breathalyzer machine used in this case was functioning properly on the date of the traffic stop. Mull observed that his pen broke into pieces during the administration of the breathalyzer test and had to be reassembled.

{¶ 12} After the parties were finished with their presentation of evidence and closing arguments, the trial court found appellant guilty of both counts of operating a vehicle under the influence of alcohol or drugs, but not guilty of driving in marked lanes. In its explanation for its verdict, the trial court indicated that it found appellant to be less than credible. The trial court explained that appellant's defense was inconsistent with the

4.

results of the breathalyzer test, which revealed that appellant was indeed operating her vehicle while under the influence of alcohol.

{¶ 13} The court went on to merge the two counts of operating a vehicle under the influence of alcohol or drugs. Ultimately, the trial court imposed a sentence of 180 days in jail, 134 of which the court suspended. As to the remaining 46 days, the court ordered appellant to serve ten days in jail and 36 days on electronic home monitoring. Further, the trial court placed appellant on one year of probation, ordered her to pay costs, and imposed a two-year license suspension. Thereafter, appellant filed her timely notice of appeal.

## B. Assignments of Error

{¶ 14} On appeal, appellant assigns the following assignments of error for our review:

I. The assistance of counsel is ineffective when counsel raises mitigation as a defense, when raising mitigation requires admissions to an offense in an OVI.

II. The Defendant had evidence to undermine the validity of the Breathalyzer she was given. However, trial counsel failed to introduce this evidence during the suppression hearing and did not make an effort to introduce further evidence in support during trial. This lack of action harmed the Defendant by negatively affecting the outcome of trial and making counsel's assistance ineffective.

5.

{¶ 15} Because appellant's assignments of error each raise the issue of the effectiveness of trial counsel, we will address them simultaneously.

## II. Analysis

{¶ 16} In appellant's assignments of error, she argues that her trial counsel provided ineffective assistance. To demonstrate ineffective assistance of counsel, appellant must first show that trial counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because "effective assistance" may involve different approaches or strategies, our scrutiny of trial counsel's performance "must be highly deferential" with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689. Should appellant demonstrate her trial counsel's performance was defective, appellant must also demonstrate that prejudice resulted. *Bradley* at paragraph two of the syllabus.

{¶ 17} Here, appellant argues that her trial counsel rendered ineffective assistance in two ways. First, appellant contends that trial counsel should not have allowed her to testify at the suppression hearing as to mitigating reasons for her traffic stop. Second, appellant asserts that trial counsel should have introduced evidence as to the broken condition of the breathalyzer machine at the suppression hearing in order to undermine the credibility of the breathalyzer test.

6.

{¶ 18} As to her first argument, appellant contends that "by offering testimony to mitigate the reason for the observed behavior by the Trooper, Ms. Taylor admitted to the behavior that led to the stop itself. In the context of a suppression hearing, this testimony only served to harm Ms. Taylor by virtually guaranteeing the motion to suppress would be denied."

{¶ 19} During the suppression hearing held in this case, appellant provided the following testimony to explain why she stopped abruptly at a traffic light prior to the initiation of the traffic stop:

Q: April, you heard the officer's testimony. That was the night of February 23rd. Do you recall that evening?

A: Yes.

Q: And could you see the video as well?

A: Yes. I've watched it several times.

Q: And was that you driving the vehicle southbound on Central Avenue – I'm sorry. Or Secor Road?

A: Yes.

Q: Okay, April. And is there anything about your vehicle – did you see the rocking portion of the vehicle?

A: Yes.

Q: And is there anything, about your vehicle, that would make it behave in that manner?

7.

A: This was my maybe fourth time driving this vehicle. My previous vehicle was taken, from me, for the previous pullover situation. I just got my license back, and did this vehicle, because I had no other choice. This vehicle has issues with the shocks. The rear shocks and the front shocks. I could only afford to get one done at a time. So the back was more important to get done. So I did the back shocks. And the vehicle also has an issue with the wheel alignment, which I couldn't get fixed until after I got the first set in the front shocks done. Otherwise, it would be pointless to get the alignment done. So I have an alignment issue with the vehicle. And it's also an eight-cylinder engine vehicle. I'm used to driving four or a six-cylinder engine. So that engine is very big compared to what I'm used to driving. But I have no choice.

Q: So does it stop like that frequently?

A: All the time. Even as driving, any bump, any piece in the street, it bounces up and down. Any go/stop position it bounces all the time.

Appellant went on to testify as to why she weaved once she passed through the intersection and continued on Secor Road, explaining that she was attempting to avoid potholes and had spilled a drink inside her vehicle.

{¶ 20} After reviewing the entire record, including the foregoing testimony, we do not find that trial counsel's decision to call appellant to testify at the suppression hearing rises to the level of deficient performance. "The decision whether to call a defendant as a

8.

witness falls within the purview of trial tactics," *State v. Adkins*, 144 Ohio App.3d 633, 646, 761 N.E.2d 94 (12th Dist.2001), and "[d]ebatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

{¶ 21} Relevant to the issue raised by appellant, the Supreme Court of Ohio has stated that "[d]efendants have 'a fundamental and a personal right' to testify, which is 'waivable only by an accused.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 257, quoting *State v. Bey*, 85 Ohio St.3d 487, 499, 709 N.E.2d 484 (1999). Further, in the context of a similar ineffective assistance argument, we have held that "the decision whether to take the stand ultimately rests with the defendant." *State v. Driftmyer*, 6th Dist. Ottawa No. OT-16-021, 2017-Ohio-4016, ¶ 23, citing *State v. Turner*, 6th Dist. Wood No. WD-11-025, 2012-Ohio-3863, ¶ 45.

{¶ 22} Moreover, we find that the testimony provided by appellant at the suppression hearing did not influence the trial court's decision to deny the motion to suppress, and thus did not prejudice appellant. Notably, the trial court explained its reasoning behind denying appellant's motion to suppress on the record, as follows:

> Yeah. I saw the lights rock. Whether I saw a Marked Lanes violation or not, I'm not sure. To be honest with you, I'm not holding either of those two things against you. When I drive down that narrow [road], I commit a Marked Lanes violation, okay? So short of you being – weaving all over the road, that to me isn't the basis for the stop here. You

9.

jerking forward and coming back, whether it was because of your shocks or whether it was because you were traveling a hundred miles an hour, I'm not taking that into consideration as to the stop. I'm purely looking at the speed. * * * So every explanation that you gave for why these things happened, you still can't get around, in my opinion, the speed. And I have to look at this in the totality of the circumstances. And like I said, even if I throw out the Marked Lanes, and throw out the abrupt stop, I don't see how you get [past] the speed. So at this point, I'm going to deny the Motion to Suppress.

{¶ 23} In light of the foregoing, it is clear that the trial court found that Mull had reasonable suspicion to initiate a traffic stop in this case based upon appellant's speeding infraction, not the rocking of appellant's vehicle or her alleged marked lanes violation. Consequently, the outcome of the proceedings, namely the denial of appellant's motion to suppress, would have remained the same even without appellant's mitigation testimony.

{¶ 24} Next, we turn to appellant's second argument concerning trial counsel's failure to introduce evidence of the condition of the breathalyzer machine at the suppression hearing. As noted in our recitation of the facts above, appellant's argument in support of her motion to suppress was limited to the claim that Mull did not have a reasonable, articulable suspicion of criminal activity to warrant his initiation of the traffic stop that gave rise to appellant's citation. Clearly, the breathalyzer test, which was conducted after the traffic stop was well underway, did not contribute to Mull's decision

10.

to stop appellant's vehicle. Thus, evidence that might have undermined the accuracy of the results of the breathalyzer test would have been irrelevant (and therefore inadmissible) to the trial court's examination of appellant's argument challenging whether the traffic stop was justified by reasonable suspicion. Upon due consideration of appellant's argument, we find that trial counsel properly limited the presentation of evidence to the issues raised in appellant's motion to suppress.

{¶ 25} In short, appellant has failed to demonstrate that trial counsel's conduct at the suppression hearing was deficient or prejudicial. Therefore, we find that appellant has not demonstrated that her trial counsel rendered ineffective assistance of counsel. Accordingly, appellant's assignments of error are not well-taken.

### III. Conclusion

{¶ 26} In light of the foregoing, the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.       _____
                 JUDGE

Thomas J. Osowik, J.        _____
                 JUDGE

Gene A. Zmuda, P.J.       
CONCUR.           _____
                 JUDGE

---

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.