[Cite as *State v. Malloy*, 2026-Ohio-14.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

KEITH L. MALLOY,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-02

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR2024 0199

Judgment Affirmed

Date of Decision: January 5, 2026

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Keith L. Malloy ("Malloy"), appeals the January 21, 2025 judgment entry of sentencing of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On September 12, 2024, the Allen County Grand Jury indicted Malloy on Count One of aggravated burglary in violation of R.C. 2911.11(A)(1), (B), a first-degree felony; and Count Two of strangulation in violation of R.C. 2903.18(B)(2), (C)(2), a third-degree felony. Count One of the indictment included a repeat-violent-offender specification under R.C. 2941.149(A). On September 20, 2024, Malloy waived his right to be present for arraignment and entered written pleas of not guilty, which the trial court accepted.

{¶3} On December 5, 2024, the State filed its notice of intent to use certified copies of judgment entries of Malloy's prior convictions to prove that Malloy was convicted in 2004 of aggravated burglary with a firearm and aggravated robbery, both first-degree felonies.

{¶4} On December 19, 2024, a motion hearing was held wherein Malloy's trial counsel objected to the jury hearing any evidence regarding Malloy's prior convictions. Specifically, Malloy's trial counsel objected to the jury being informed that Malloy served 20 years in prison for committing violent offenses. The trial

court sustained the objection and ruled that, unless the defense opened the door, the State could not introduce any evidence of Malloy's prior convictions at trial.

{¶5} The case proceeded to a three-day jury trial on January 7-9, 2024. On January 9, 2024, the jury returned a guilty verdict on Count One of aggravated burglary. The jury was unable to reach a verdict on Count Two of strangulation and, upon the request of the State, the trial court dismissed the charge.

{¶6} The repeat-violent-offender specification was tried to the bench on January 17, 2025. The parties stipulated to the admission of certified judgment entries as proof of Malloy's prior convictions, and the trial court found Malloy to be a repeat violent offender. The trial court sentenced Malloy to an indefinite mandatory minimum term of 11 years to a maximum term of 16.5 years in prison for aggravated burglary, and to four years in prison for the repeat-violent-offender specification. The trial court ordered that the sentences be served consecutively, for an aggregate prison term of 15 to 20.5 years.[1]

{¶7} Malloy filed his notice of appeal on January 28, 2025. He raises three assignments of error for our review. For ease of discussion, we will address the first and second assignments of error together.

**First Assignment of Error**

**The Trial Court erred by convicting Mr. Malloy of the RVO Specification after the State had rested without introduction of any evidence in support of that allegation, by reopening the case**

---

[1] The trial court filed its judgment entry of sentencing on January 21, 2025.

**for new evidence after having already accepted the verdict of Guilty as to Count I, in violation of the Double Jeopardy Clause of the Fifth Amendment as incorporated by the Fourteenth Amendment and in violation of Article I, Section 10, of the Ohio Constitution.**

**Second Assignment of Error**

**Mr. Malloy was denied the effective assistance of counsel as to the failure to object to the second trial on the RVO Specification on Double Jeopardy Clause grounds.**

{¶8} In the first assignment of error, Malloy argues that the trial court erred by conducting a "bifurcated hearing" to determine whether he is a repeat violent offender. (Appellant's Brief at 6). In particular, Malloy argues that the State should have presented evidence of his status as a repeat violent offender during the jury trial—not at a hearing held after the jury returned a guilty verdict. According to Malloy, "nothing prevented the State from proving the Repeat Violent Offender Specification during the only scheduled trial event." (*Id.* at 9).

{¶9} In his second assignment of error, Malloy argues that his trial counsel was ineffective for not objecting to the trial court's decision to bifurcate the proceedings since "[t]here is no legitimate upside to not objecting." (*Id.* at 12).

*Standard of Review*

{¶10} When an indictment includes a repeat-violent-offender specification, "[t]he court shall determine the issue of whether an offender is a repeat violent offender." R.C. 2941.149(B). Relevant to this appeal, a person is a repeat violent offender if (1) he "is being sentenced for committing . . . any felony of the first or

second degree that is an offense of violence" and (2) he "previously was convicted of or pleaded guilty to [any felony of the first or second degree that is an offense of violence]." R.C. 2929.01(CC).

{¶11} A defendant asserting a claim of ineffective assistance of counsel must establish that (1) his counsel's performance was deficient or unreasonable under the circumstances, and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Reversal of a conviction or sentence based on a claim of ineffective assistance of counsel requires satisfying this two-pronged test, and the failure to make either showing is fatal to the claim. *State v. Conway*, 2006-Ohio-791, ¶ 165, 168.

*Analysis*

{¶12} In his first assignment of error, Malloy challenges the trial court's handling of the repeat-violent-offender specification. In particular, Malloy takes issue with the trial court hearing the matter and receiving evidence *after* the jury returned a guilty verdict on the underlying aggravated-burglary charge. Malloy contends that his sentence for the repeat-violent-offender specification should be vacated because he was improperly subjected to double jeopardy. We disagree.

{¶13} R.C. 2924.149(B) provides that "[t]he court shall determine the issue of whether an offender is a repeat violent offender." Thus, by statute, the trial court determines the repeat-violent-offender specification—not the jury. *State v. Wolfe*,

Case No. 1-25-02

2025-Ohio-866, ¶ 13 (2d Dist.) (concluding that, by statute, the repeat-violent-offender specification is to be determined by the court rather than the jury).

> This is a constitutionally appropriate finding for a judge (rather than a jury) to make, because the evidence supporting the repeat-violent-offender specification is information about the defendant's criminal history and, as the Ohio Supreme Court has explained, "[w]hen designating an offender as a 'repeat violent offender' . . . , a trial court does not violate the Sixth Amendment by considering relevant information about the offender's prior conviction that is part of the judicial record." *State v. Hunter*, [2009-Ohio-4147, paragraph two of the syllabus]. Moreover, "the Sixth Amendment does not limit a sentencing court's consideration to the *existence* of a prior conviction. On the contrary, the United States Supreme Court has held that courts may consider the information contained in court documents that are related to the prior conviction." (Emphasis [in original]) *Id.* at ¶ 36, citing *Shepard v. United States*, [544 U.S. 13, 19-20 (2005)].

> In short, evidence of the repeat-violent-offender specification is to be presented to the trial court outside the presence of the jury. Were the law instead as [the defendant] argues, a defendant could expect evidence of his violent criminal convictions to be placed before the jury during the State's case-in-chief (whether or not the defendant chose to testify) posing a great danger that the jury might draw the improper inference that the defendant committed the crime charged because he committed other violent offenses in the past.

*State v. Oller*, 2017-Ohio-814, ¶ 37-38 (10th Dist.).

{¶14} In this case, the trial court did not err by determining Malloy's status as a repeat violent offender after the jury found him guilty of the underlying criminal charge. Under R.C. 2929.01(CC), a "repeat violent offender" means a person about whom both of the following apply:

> (1) The person is being sentenced for committing or for complicity in committing any of the following:

-6-

(a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;

(b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (CC)(1)(a) of this section.

(2) The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) or (b) of this section.

R.C. 2929.01(CC). Therefore, the first step in the process of designating a person as a repeat violent offender requires that the person is "being sentenced for committing" an "offense of violence." R.C. 2929.01(CC)(1)(a). Here, the jury found Malloy guilty of aggravated burglary, which is an offense of violence. *See* R.C. 2901.01(A)(9)(a). Accordingly, the trial court did not err by deciding the repeat-violent-offender specification *after* the jury returned a guilty verdict.

{¶15} Malloy further suggests that his trial counsel was ineffective for failing to object to the trial court's decision to conduct a "second trial" on the repeat-violent-offender specification after the jury found him guilty of aggravated burglary. (Appellant's Brief at 11). Malloy contends that the State should have presented evidence of his prior convictions during the jury trial. To the extent Malloy is arguing that he was improperly subjected to double jeopardy, we reject this argument because a repeat-violent-offender specification is not a criminal offense but rather a penalty enhancement. *See State v. Hunter*, 2009-Ohio-4147, ¶ 12 (noting that repeat-violent-offender specifications are penalty enhancements).

{¶16} The record shows that, at a hearing held on December 19, 2024, Malloy's trial counsel objected to the jury hearing any evidence of Malloy's prior convictions. Such objection comports with R.C. 2924.149(C), which provides,

> At the arraignment of the defendant or as soon thereafter as is practicable, the prosecuting attorney may give notice to the defendant of the prosecuting attorney's intention to use a certified copy of the entry of judgment of a prior conviction as proof of that prior conviction. *The defendant must then give notice to the prosecuting attorney of the defendant's intention to object to the use of the entry of judgment.* If the defendant pursuant to Criminal Rule 12 does not give notice of that intention to the prosecuting attorney before trial, the defendant waives the objection to the use of an entry of judgment as proof of the defendant's prior conviction, as shown on the entry of judgment.

(Emphasis added.) Thus, Malloy's trial counsel properly objected to the jury hearing evidence of Malloy's prior convictions. Further, it was within the trial court's authority to delay the presentation of evidence of Malloy's prior convictions until after the jury returned a guilty verdict. *See* Evid.R. 611(A) (providing that a trial court shall exercise reasonable control over the mode and manner of the presentation of evidence so as to make the presentation "effective for the ascertainment of the truth" and to "avoid needless consumption of time").

{¶17} Based on the foregoing, the trial court did not err by determining Malloy's status as a repeat violent offender after the jury found him guilty of the underlying aggravated-burglary charge. Moreover, Malloy's trial counsel was not ineffective because the trial court reasonably controlled the mode and manner of the presentation of evidence of Malloy's prior convictions.

{¶18} Malloy's first and second assignments of error are overruled.

**Third Assignment of Error**

**The Trial Court erred by depriving Mr. Malloy his right to testify.**

{¶19} In his third assignment of error, Malloy argues that he was improperly deprived of his constitutional right to testify because the trial court did not "conduct a proper colloquy with Mr. Malloy as to whether he wanted to testify or was waiving his constitutional right to do so." (Appellant's Brief at 15). Malloy contends that the trial court "debated" with him and "shut down the discussion" of Malloy testifying in his own defense. (Appellant's Reply Brief at 2). We disagree.

*Standard of Review*

{¶20} "Generally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused." *State v. Bey*, 85 Ohio St.3d 487, 499 (1999). However, "a trial court is not *required* to conduct an inquiry with the defendant concerning the decision whether to testify in his defense." (Emphasis in original.) *Id.*

*Analysis*

{¶21} Despite Malloy's assertion that the trial court deprived him of his right to testify, nothing in the record suggests that Malloy wished to testify and was denied the opportunity to do so. *See Bey* at 499-500 (reasoning that a defendant is not denied his right to testify when there is "nothing in the record" to support that

the defendant "misunderstood or was unaware of his right to testify" or that he "wanted to testify and was denied the opportunity to do so").

**{¶22}** The record shows that, after the defense presented its case and then rested, Malloy's trial counsel renewed the Crim.R. 29 motion, which the trial court overruled. The State declined to present a rebuttal case and the jury was dismissed for the evening. Outside the presence of the jury, the trial court directed the parties to review the jury instructions and be prepared to discuss any objections in the morning. At this point, Malloy raised his hand and asked, "Yea, will I have a chance to speak on that also?" (Jan. 8, 2025 Tr. at 521). The trial court asked Malloy if he had questions regarding the jury instructions. Malloy replied, "Yea, I had a whole bunch of, uh, I had a whole bunch of questions. I had a whole bunch of evidence, nothing got brought up." (*Id.* at 522). The trial court told Malloy to speak with his trial counsel and that any remaining concerns would be addressed in the morning.

**{¶23}** The following morning, Malloy expressed his concern that "exculpatory evidence" was "not being shown" to the jury. (Jan. 9, 2025 Tr. at 530). In particular, Malloy stated, "I got a flash drive." (*Id.* at 532). "It shows everything that happened, and the jury hasn't seen that flash drive." (*Id.*). The trial court explained to Malloy why some evidence may not be admissible and that his trial counsel may not be presenting certain things for trial strategy. Malloy and the trial court then engaged in the following lengthy exchange.

Mr. Malloy: I got one more question for you.

-10-

The Court:    Mhmm.

Mr. Malloy:  Can I, can I utilize my Sixth Amendment to uh participate in my defense?  I feel like I need to be a part of closing arguments.

The Court:    Okay.    Couple of things there.    The Sixth Amendment is used in a couple different ways, okay?  One of them is your right not to testify.  You're not asking to testify, you're wanting to give a closing argument?  Is that what you're telling me?

Mr. Malloy:  Yes.

The Court:    Okay.

Mr. Malloy:  I would like to participate in that.

The Court:    No.    Because you have representation, your attorneys will do the closing argument.  You can talk with them about what they're gonna say or what you want them to say, but again, at the end of the day how they present that, that's a trial strategy that's left to the attorneys to make that determination because again, there's rules, and if you get up here not knowing the rules, you might get into things that are not allowed, that did not come out in evidence, or you might start doing what amounts to testifying when you didn't take the stand to testify.  And so no, you don't have a right to what we call hybrid representation.  You have attorneys, they will do the closing. I mean, you can give em your notes, you can tell em what you'd like em to say.

Mr. Malloy:  I been given em notes since we started.

The Court:  Okay.  But again, ultimately –

Mr. Malloy:  And everything I –

The Court:  Okay, but ultimately it's there [sic] determination because they're the ones who are trained and have experience in trying cases.

Mr. Malloy: I've never in my life seen a, a, a, a, a closing argument, um, not a closing argument. I have never seen a defense rest in less than fifteen (15) minutes. Like, we was done in less than fifteen (15) minutes because she said all the judgment. Well she told my family member –

The Court: How many trials, how many criminal trials have you sat through, sir?

Mr. Malloy: None. This is my first one.

The Court: Okay. I've sat through many, I've seen way quicker. I've seen, yea, rarely do I see longer quite frankly from the defense unless they have an expert witness to testify about something. They usually, when it's just factual witnesses who weren't there for the actual incident, it does go quick. There's not a whole lot that they can give because they weren't, and you heard [the State] ask those questions, you weren't there at 1018 Richie from 11:00 to midnight, whatever time it was. Those witnesses weren't there. So they don't have as much to add as you would think and things that they may know don't necessarily, aren't necessarily admissible. Especially if they weren't there. So yea, unfortunately, I mean, or fortunately, however you want to look at, it often goes quickly on the defense side when they don't have somebody else that was there.

Mr. Malloy: Okay.

. . .

The Court: . . . The State has to abide by the rules of evidence. The defense has to abide by the rules of evidence. And the rules of evidence are designed for very specific reasons and the idea is to focus as much as possible, solely on the events that are at trial. The reason that we got here. So, in this case, April 29th, 2024, at approximately 11:00 p.m., if believed. That's, if something happened at that, on that date and time. That's what the rules of evidence are designed for. That's why, quite frankly, they can't go into what your prior convictions are or how long you were in prison, or what you might have done before that. They have to stay away from all of that. Everybody has to stay away from, well she said this and she said this, and things like that. They can talk about what you said because you're

the defendant, but only that side can talk about what you said, because you could only present what you're gonna say through your own testimony. You can't present it through others. So that, that's where I see party's [sic], whether it's a criminal case or a civil case, people that haven't studied the law where they struggle because they don't understand, why can't we do this, why can't we do this, why can't we do this, why can't she say this, why can't this person come in, because again, there's all kinds of rules and you have to be careful how you present things, and sometimes when we're presenting evidence, we're doing it to set up what we're going to say in closing, and we don't want to necessarily get into more detail because we want to be able to argue certain things to the jury. Again, that's all part of strategy and things that you learn in law school and you learn from practicing law. And, and things of that nature. . . .

. . .

Mr. Malloy: Yesterday, it was a cop, a detective, I think him, he got up on the stand and testified, but he sat here and heard every testimony that came through here.

The Court: Yes.

Mr. Malloy: And he was still able to testify. I understand that he was testifying against phone calls but he also testified, uh –

The Court: The State is allowed.

Mr. Malloy: On a picture.

The Court: Okay, let me pause you. The State is allowed to have a representative. That's almost always the detective that investigated the case, who is able to sit here throughout the trial. Just as you were able to sit here throughout the trial and you would've had that benefit if say you came to testify. Not that you had to testify because you have a right not to, but just like you had the opportunity to sit through the whole trial and hear everything and then decide whether you're going to testify or not, the State's allowed a representative to sit in here and – with them at the table. In some counties, they actually have allowed the victim to sit at the table throughout the entire proceeding. Our prosecutor's office usually

-13-

likes to have the investigating officer with them, and so that's why [the detective]'s been in here. Again, those are, those are part of the rules.

(Jan. 9, 2025 Tr. at 537-544).

**{¶24}** At no time during the lengthy exchange did Malloy notify the trial court that he wished to testify. Rather, Malloy informed the trial court that he wanted to speak to the jury in closing argument. The trial court properly denied Malloy's request. *See State v. Martin*, 2004-Ohio-5471, ¶ 44 (prohibiting hybrid representation where a defendant and counsel act as co-counsel, sharing responsibilities in preparing and conducting trial). Absent any indication that Malloy wished to exercise his right to testify, the trial court was not required to ask him whether he wanted to waive that right. *Bey*, 85 Ohio St.3d at 499.

**{¶25}** Malloy's third assignment of error is overruled.

**{¶26}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued in assignments, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WALDICK and MILLER, J.J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

 

 

_____

William R. Zimmerman, Judge

 

 

_____

Juergen A. Waldick, Judge

 

 

_____

Mark C. Miller, Judge

DATED:
/hls